[No. F035361. Fifth Dist. Mar. 7, 2002.]

JAMES W. MAPLES, as Assessor/Recorder, etc., Plaintiff and Respondent, v.
KERN COUNTY ASSESSMENT APPEALS BOARD, Defendant;
LAKE ISABELLA ENTERPRISES II, LP, Real Party in Interest and Appellant.

1008

**COUNSEL**

Aronowitz, Bordelon & Skidmore, Paul S. Aronowitz and Lawrence E. Skidmore for Real Party in Interest and Appellant.

Archie T. Wright III for California Council for Affordable Housing as Amicus Curiae on behalf of Real Party in Interest and Appellant.

B. C. Barmann, Sr., County Counsel, and Jerri S. Bradley, Deputy County Counsel, for Plaintiff and Respondent.

**OPINION**

**LEVY, J.**—This appeal concerns the property tax assessment of low-income housing developed and operated by appellant, Lake Isabella Enterprises II, LP (Lake Isabella), under section 515 of the National Housing Act of 1949. Such housing is subject to various restrictions, including a maximum return on equity. However, the financing is federally subsidized. The government provides credits that result in a 1 percent effective mortgage interest rate.

At issue here is the proper method of determining the value of this restricted property. Respondent, James W. Maples, Assessor/Recorder, County of Kern (Assessor), relied on the cost approach, supported by a capitalized income calculation using the subsidized 1 percent mortgage interest rate. Lake Isabella challenged this assessment arguing that the property had to be valued with an income approach that considered and incorporated a "market" interest rate.

The Kern County Assessment Appeals Board (Board) determined that the Assessor had incorrectly assessed the property and adopted Lake Isabella's value calculation. Thereafter, the trial court granted the Assessor's petition for writ of mandate and directed the Board to vacate its value determination.

As discussed below, the income approach is the appropriate method for valuing low-income housing. However, in accordance with the State Board of Equalization's (SBE) interpretation of the applicable California Code of Regulations section, it was reasonable for the Assessor to incorporate the effective interest rate into the value calculation. Therefore, the trial court's judgment will be affirmed.

STATEMENT OF THE CASE AND FACTS

Lake Isabella owns a rural multifamily apartment complex that it developed under section 515 of the National Housing Act of 1949 (section 515). (42 U.S.C. § 1485.) Based on the cost of construction, the Assessor valued this property as of November 1995 at $1,792,143. That value was adjusted upward to $1,831,179 on January 1, 1997. According to Lake Isabella, this property should have a base year enrolled value of $790,000.

The section 515 program was designed to provide low-income housing in rural areas. In exchange for the owner's agreement to set rents on a "low income" basis for eligible families, the federal government provides favorable financing. Typically, an owner invests no more than 5 percent of the purchase price and the balance is financed through the Farmers Home Administration (FmHA). Although the interest on the FmHA loan is at market rate, the owner receives an interest credit that reduces the effective mortgage interest rate to 1 percent. (42 U.S.C. § 1490a (a)(1)(B).) However, profits are restricted. The owner is limited to an annual net return of 8 percent on the original equity investment.

Lake Isabella filed equalization appeals with the Board contesting both the base year and the 1997/1998 assessments. At the hearing on its appeal, Lake

Isabella argued that because this property is subject to legal restrictions on the income that are unrelated to cost, it must be assessed by using the income approach set forth in California Code of Regulations, title 18,[1] section 8. This appraisal method rests on the assumption that in an open market a willing buyer of the property would pay a willing seller an amount approximately equal to the present value of the future income to be derived from the property. (*Texaco Producing, Inc. v. County of Kern* (1998) 66 Cal.App.4th 1029, 1036-1037 [78 Cal.Rptr.2d 433].)

■ The process of converting an income stream to present value is known as capitalizing. (*Texaco Producing, Inc. v. County of Kern, supra,* 66 Cal.App.4th at p. 1037.) Rule 8, subdivision (g) sets forth the two ways to develop a capitalization rate. The preferred method is to derive the rate from the market by comparing the net incomes that could reasonably have been anticipated from recently sold comparable properties with their sales prices. (Rule 8, subd. (g)(1); *Texaco Producing, Inc. v. County of Kern, supra,* 66 Cal.App.4th at p. 1037.) However, since adequate data is usually not available to determine a market-derived rate for section 515 property, the secondary "band-of-investment" analysis is used. This method requires an appraiser to calculate a weighted average of the cost of the debt and the expected rate of return on the equity appropriate to the California money markets. (Rule 8, subd. (g)(2); *Texaco Producing, Inc. v. County of Kern, supra,* 66 Cal.App.4th at p. 1038.)

At the Board hearing, Lake Isabella proposed a capitalization rate of .0704 based on a band-of-investment analysis. To calculate a rate using this method, the debt percentage is multiplied by the cost of the debt, i.e., the mortgage rate, and the equity percentage is multiplied by the expected rate of return for the investment. When added together, these two numbers provide an overall indication of the discount rate. (*Texaco Producing, Inc. v. County of Kern, supra,* 66 Cal.App.4th at p. 1038.) Relying on the interest rates offered by California lending institutions for 95 percent loans, Lake Isabella used a 6.99 percent mortgage rate in its calculation. For the equity component, Lake Isabella used the 8 percent maximum return for section 515 property.

In response, the Assessor argued that the cost approach was the correct way to value the property. Applying this method, the Assessor assigned a base year value of $1,742,143. To support this figure, the Assessor also offered an income approach calculation. The parties stipulated that the net income to be capitalized was $55,178. They also agreed on the equity

---

[1] The applicable California Code of Regulations, title 18 sections will hereafter be referred to as Rules.

component. However, the parties disagreed on the cost of the debt. The Assessor incorporated the 1 percent effective loan rate in contrast to Lake Isabella's use of a market rate. This variation in one component resulted in a sizeable value disparity. While Lake Isabella arrived at a base year value of $790,000, the Assessor's calculation resulted in a base year value of $1,996,780.

The Board found in favor of Lake Isabella. It determined that the Assessor's use of the cost method to value the property was improper. Rather, under the State Board of Equalization Rules the income approach is applied. The Board further concluded that, in calculating a capitalization rate, the restrictions on the income that can be generated by such federally subsidized housing must be considered. The Board acknowledged the SBE recommendation to use the 1 percent interest rate when valuing section 515 property but rejected that guideline as being contrary to Rule 8 and unpersuasive. Thus, based on the evidence presented by Lake Isabella, the Board concluded that Lake Isabella's capitalization rate of .0704 was correct and that $790,000 was the full cash value of the property.

The Assessor filed a petition in the superior court seeking a writ of mandate directing the Board to vacate its decision. According to the Assessor, Lake Isabella had not demonstrated that the enrolled values based on the cost approach were erroneous. The Assessor further claimed that the Board erred in accepting Lake Isabella's value opinion and market rate capitalization calculation.

The trial court granted the Assessor's petition and directed the Board to vacate its decision and conduct further proceedings. Since the court viewed the case as presenting primarily an issue of law, it limited itself to determining whether the valuation method was " 'arbitrary, in excess of discretion, or in violation of the standards prescribed by law.' " Under this standard, the court concluded that the income approach was the proper valuation method. However, unlike the Board, the trial court adopted the SBE guidelines and held that 1 percent should be used for the debt component of the band-of-investment capitalization rate calculation. The court reasoned "that in 515 property assessments the 1% rate should logically be applied, inasmuch as it represents the only applicable market rate for 515 property."

DISCUSSION

1. *Standard of Review.*

The parties disagree on whether this court should defer to the Board's findings or should review the case de novo. Lake Isabella argues that the

Board's decision, specifically the application of the income approach, should be upheld if supported by substantial evidence. In contrast, the Assessor contends the absence of a factual dispute requires that the case be resolved as a matter of law.

■ The Board, as a board of equalization, is a constitutional agency exercising quasi-judicial powers delegated to it by the California Constitution. (*Shell Western E & P, Inc. v. County of Lake* (1990) 224 Cal.App.3d 974, 979 [274 Cal.Rptr. 313].) In light of this semijudicial status, the Board's " 'factual determinations are entitled on appeal to the same deference due a judicial decision, i.e., review under the substantial evidence standard.' " (*Ibid.*) However, when a board of equalization purports to decide a question of law, the decision is reviewed de novo. (*Id.* at p. 980.) "A board's 'arbitrariness, abuse of discretion, or failure to follow the standards prescribed by the Legislature' are legal matters subject to judicial correction." (*Ibid.*)

■ Where the taxpayer claims a valid valuation method was improperly applied, the trial court is limited to reviewing the administrative record. (*Texaco Producing, Inc. v. County of Kern, supra,* 66 Cal.App.4th at p. 1046.) The court may overturn the assessment appeals board's decision only if there is no substantial evidence in the administrative record to support it. (*Id.* at pp. 1046-1047.) However, where the taxpayer challenges the validity of the valuation method itself, the court is faced with a question of law. In such a case, the court does not evaluate whether substantial evidence supports the board's decision, but rather must inquire into whether the challenged valuation method is arbitrary, in excess of discretion, or in violation of the standards prescribed by law. (*Id.* at p. 1047.)

Here, the Assessor valued the property based on the cost of construction. Whether this is a valid method for appraising section 515 property is a question of law subject to de novo review. Both parties also used a band-of-investment income approach. However, they arrived at markedly different values. The parties agree on the annual income to be capitalized and on the equity component. The only disagreement concerns what debt component to apply under Rule 8.

Whether a taxpayer is challenging "method" or "application" is not always easy to ascertain. (*Freeport-McMoran Resource Partners v. County of Lake* (1993) 12 Cal.App.4th 634, 640 [16 Cal.Rptr.2d 428].) If none of the facts are in dispute, what might otherwise appear to be a factual challenge, and therefore subject to substantial evidence review, is actually a legal challenge. (*Id.* at p. 641.) " 'The issue is not whether the assessor misunderstood or

distorted the available data, but whether he or she chose an appraisal method which by its nature was incapable of correctly estimating market value.'" (*Ibid.*)

Since the only dispute here is whether to apply the section 515 subsidized interest rate or a general market interest rate, i.e., a rate that would apply to unrestricted property, the question presented is one of law. The parties otherwise agree on the calculations. Therefore, the trial court properly reviewed the Board's decision de novo. This court must do the same. (*Freeport-McMoran Resource Partners v. County of Lake, supra,* 12 Cal.App.4th at p. 641.)

2. *The cost approach is inappropriate for valuing section 515 property.*

■ Relying on Rules 6 and 8, the Board concluded that the Assessor incorrectly valued the subject property based on its cost. The trial court impliedly agreed. Although the rules do not absolutely prohibit the use of the cost approach for section 515 property, they make it clear that this approach is inappropriate.

Rule 6 provides that the cost approach to value is preferred "when neither reliable sales data . . . nor reliable income data are available and *when the income from the property is not so regulated as to make such cost irrelevant.*" (Rule 6, subd. (a), italics added.) Similarly, Rule 8 explains that the income approach is preferred when reliable sales data are not available and the cost approaches are unreliable because, among other reasons, the reproducible property *"is subject to legal restrictions on income that are unrelated to cost."* (Rule 8, subd. (a), italics added.)

With section 515 property the income is highly regulated. Lake Isabella is limited to an 8 percent return on its initial equity investment. This restriction on income is unrelated to the initial cost of the project. Consequently, the Assessor erred in relying on the Rule 6 cost approach.

3. *The capitalization rate should be calculated using the effective 1 percent interest rate.*

■ Rule 8, subdivision (g)(2), sets forth the procedure for developing a band-of-investment capitalization rate. The first step is to derive a "weighted average of the capitalization rates for debt and for equity capital *appropriate to the California money markets . . . .*" (Italics added.) This appeal turns on the meaning of the term "California money markets" in the context of section 515 property.

To provide guidance to the county assessors on the various issues that arise in valuing section 515 property, the SBE prepared a letter on this subject dated October 1, 1998. With respect to the band-of-investment method of deriving a capitalization rate, the SBE advised the assessors to use the effective 1 percent interest rate for the debt component. The SBE analyzed this issue as follows:

"For section 515 properties, the primary issue that arises is the estimate of the rate for the debt component. Specifically, the issue is whether the appraiser should use (1) a rate that is, as stated in rule 8, 'appropriate to the California money markets,' or (2) a rate that reflects the investor's actual cost as to the financed portion of the overall investment.

"The assertion in favor of the first approach relies on the apparent mandate of rule 8. However, the phrase 'appropriate to the California money markets' should not be construed so narrowly that it would require the use of a debt component that bears little or no relationship to the net income that is forecast for the overall investment. That is, since the favorable financing available for a section 515 property would not be obtained except for the corresponding restrictions on income, the use of a 'market' rate for debt results in an overall rate that relates, theoretically, to the income from the property as if the restrictions on income were absent. But since those restrictions are in fact inherent in the investment, and since it has already been established that the income to be capitalized is the restricted income, the rate for debt in the band-of-investment method of estimating an overall capitalization rate for these properties must be the subsidized rate (i.e., the investor's effective rate of 1 percent)."

The trial court adopted the SBE's interpretation and held that the 1 percent rate should be incorporated into the calculation "inasmuch as it represents the only applicable market rate for 515 property." The court concluded that the SBE opinion was entitled to great weight as an administrative construction of a regulation that the SBE is charged with interpreting. The Assessor urges this court to do the same. According to the Assessor the SBE provides a logical and reasoned explanation for using the 1 percent subsidized rate, i.e., accuracy requires that both the income restrictions and the financing benefits be reflected in the fair market value.[2]

■ The contemporaneous administrative construction of a regulation by the agency charged with its enforcement and interpretation is entitled to great weight. Accordingly, courts generally will not depart from such construction unless it is clearly erroneous or unauthorized. (*Coca-Cola Co. v. State Bd. of Equalization* (1945) 25 Cal.2d 918, 921 [156 P.2d 1].)

---

[2]The Assessor's request that this court take judicial notice of various other SBE opinions on valuing low-income housing is granted.

 Rule 8's instruction to use a debt component rate "appropriate to the California money *markets*" invests the assessor with considerable discretion. It does not tie the rate to any particular market. Rather, the assessor has the ability to adjust for the specific market at issue. Here, that market is the highly regulated section 515 property market.

Neither a court nor a statute has previously defined the term "California money markets." Further, this court must generally defer to the SBE's interpretation of its own regulations. Considering both the unusual characteristics of section 515 property and the discretion granted to the Assessor by Rule 8, we cannot conclude as a matter of law that the SBE's construction is clearly erroneous or unauthorized. Therefore, the Assessor properly incorporated the 1 percent effective interest rate into the value calculation.

In sum, section 515 property should be valued by capitalizing the income with a rate derived through the band-of-investment method. Further, in calculating this capitalization rate, it is appropriate for the debt component to reflect the subsidized 1 percent interest rate.

DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to respondent.

Ardaiz, P. J., and Vartabedian, J., concurred.

A petition for a rehearing was denied April 2, 2002.