[No. D040790. Fourth Dist., Div. One. June 30, 2003.]

DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL, Petitioner, v. ALCOHOLIC BEVERAGE CONTROL APPEALS BOARD, Respondent; 7-ELEVEN, INC., et al., Real Parties in Interest.

1688

COUNSEL

Bill Lockyer, Attorney General, Dennis W. Dawson and Chris A. Knudsen, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

Solomon, Saltsman & Jamieson, Ralph B. Saltsman, R. Bruce Evans and James S. Eicher for Real Parties in Interest.

OPINION

BENKE, Acting P. J.—Real parties in interest Lucinda D. Keller, Wilbur L. Keller and 7-Eleven, Inc. (licensees), are holders of a liquor license issued by petitioner Department of Alcoholic Beverage Control (ABC). A clerk at a store operated by licensees sold an alcoholic beverage to a minor acting as a police decoy. ABC suspended the license for 10 days. Respondent Alcoholic Beverage Control Appeals Board (Appeals Board) reversed, finding that while the police required their decoy to make a face-to-face identification of the clerk as required by California Code of Regulations, title 4, section 141, subdivision (b)(5) (hereafter Regulations), they violated the section by conducting the identification outside rather than inside the store. ABC sought and we issued a writ of review. (See Bus. & Prof. Code,[1] § 23090.) We annul the decision of the Appeals Board.

BACKGROUND

On December 20, 2000, at approximately 6:45 p.m., El Cajon police officers using an underage decoy conducted an alcoholic beverage buy at a convenience store operated by licensees. Officer Matthew Conlon and 17-year-old Michael P. entered the store. Michael took a six-pack of beer from a cooler to the checkout counter. The clerk asked Michael for his identification. Michael handed him a driver's license indicating in bold print that he would be 21 years old in 2004. The clerk looked quickly at the license, handed it back to Michael and sold him the beer. After Michael left the store Officer Conlon, who had witnessed the transaction, identified himself to the clerk and told him he had sold beer to a minor. In order not to disrupt the operation of the store, the officer escorted the clerk, Brandon Rogers, outside where Michael made a face-to-face identification of him from a distance of

---

[1] All further statutory references are to the Business and Professions Code unless otherwise specified.

approximately five feet. Photographs were taken of Michael and the clerk. The clerk was issued a citation for selling an alcoholic beverage to a minor.

On March 8, 2001, ABC filed an accusation, alleging that an agent of the licensees sold beer to a minor in violation of section 25685, subdivision (a). The accusation sought revocation or suspension of their license. A hearing on the matter was conducted on May 20, 2001. It was concluded the police officers complied with the requirements for conducting a decoy buy operation as defined in Regulations section 141, subdivision (b)(5). Licensees were found in violation of section 25685, subdivision (a), and their license was suspended for 10 days.

Licensees appealed to the Appeals Board. The Appeals Board found that a face-to-face identification of the clerk was made by the decoy after the sale. It noted, however, Regulations section 141, subdivision (b)(5), requires that following a sale "the peace officer directing the decoy shall make a reasonable attempt to enter the licensed premises and have the minor decoy who purchased alcoholic beverages make a face-to-face identification of the alleged seller of the alcoholic beverages." Citing *Acapulco Restaurants, Inc. v. Alcoholic Beverages Control Appeals Bd.* (1998) 67 Cal.App.4th 575, 581 [79 Cal.Rptr.2d 126], the Appeals Board held the requirements of Regulations section 141, subdivision (b)(5), must be strictly followed and, citing Regulations section 141, subdivision (c),[2] a failure by the officer to reenter the premises with the decoy to conduct the face-to-face identification was a complete defense to the accusation. The Appeals Board noted that rather than reenter the premises with the decoy, the officer took the clerk outside for identification. The Appeals Board concluded an identification conducted in this manner was essentially a lineup containing a single individual. It noted the court in *Acapulco* concluded the confrontation requirements of Regulations section 141, subdivision (b)(5), were not obviated by an officer observing the transaction. The Appeals Board stated "presumably" the section was designed at least in part to ensure an unbiased identification process. It concluded that while there was no indication of a misidentification, Regulations section 141, subdivision (b)(5), had not been strictly complied with and the failure to do so was a complete defense. The decision of ABC suspending licensees' liquor license was reversed.

We grant ABC's petition for a writ of review.

---

[2]Regulations section 141, subdivision (c), states: "Failure to comply with this section shall be a defense to any action brought pursuant to Business and Professions Code Section 25658."

## DISCUSSION

Citing *Acapulco Restaurants, Inc. v. Alcoholic Beverage Control Appeals Bd., supra,* 67 Cal.App.4th 575, and Regulations section 141, subdivision (c), licensees and the Appeals Board conclude the requirements of Regulations section 141, subdivision (b)(5), must be strictly followed. They read Regulations section 141, subdivision (b)(5), as requiring the identification to be made inside the premises rather than, as occurred here, outside the premises. They assert the reasonable basis for this confining provision is to avoid suggestive and unfair lineups.[3] We conclude this interpretation is not supported by the language or history of the section.

### 1. *Regulations Section 141 and Its Origins*

In *Provigo Corp. v. Alcoholic Beverage Control Appeals Bd.* (1994) 7 Cal.4th 561 [28 Cal.Rptr.2d 638, 869 P.2d 1163], the court upheld the use of underage decoys in buy operations but noted the lack of an express statutory immunity protecting such decoys from prosecution. (*Id.* at p. 568.) Five days after the decision in *Provigo,* Assembly Bill No. 3805, originally dealing only with placing conditions on liquor licenses, was amended to include language authorizing the use of and providing immunity for underage decoys in alcoholic beverage buy operations. (Assem. Bill No. 3805 (1993-1994 Reg. Sess.) §§ 3, 4, as amended Apr. 12, 1994.)

As originally written the amendment contained alternative sections defining specific guidelines for conducting buy operations. The first allowed such operations only if there was reasonable cause to believe a licensee had sold an alcoholic beverage to a minor. The bill required the decoy be 18 years of age or younger; if asked, the decoy was to present proper identification; the decoy was to be photographed and was to be under the constant surveillance of a peace officer. (Assem. Bill No. 3805 (1993-1994 Reg. Sess.) § 3, as amended Apr. 12, 1994.)

The section also required: "After the sale is complete, the decoy shall be stopped by the peace officer or peace officers after leaving the premises and escorted back into the premises by the officer to make an immediate confrontation with the seller in order to elicit any statements." (Assem. Bill No. 3805 (1993-1994 Reg. Sess.) § 3(b)(5), as amended Apr. 12, 1994.)

The alternative section contained in the bill placed more demanding requirements on decoy buy operations. It required that before a buy operation could be undertaken, an affidavit was required stating the facts supporting reasonable cause to believe sales to minors had been made by the

---

[3]There is no allegation the identification in this case was suggestive.

licensee. It forbade underage buy operations at any establishment that had not been notified in the previous six months of the possibility such operations would be conducted. It allowed the use of a decoy who was under the age of 21 years but required the decoy appear to be 18 years of age or younger. A male decoy could not have a mustache or beard and a female decoy could not use make-up or display jewelry. The section made it a defense if the decoy's appearance, mannerism and dress were not those of a person 18 years of age or younger. The decoy was to be photographed, no attempted buy could be made when three or more persons were in line to make purchases, the decoy was to carry identification, and if the seller asked to see identification, the decoy was required to immediately identify him- or herself as a decoy. (Assem. Bill No. 3805 (1993-1994 Reg. Sess.) § 4, as amended Apr. 12, 1994.)

The section also required: "Following the completion of the sales transaction, or if there is no completed transaction, the attempted transaction, the police officer or agent of the department accompanying the decoy shall inform the seller that the purchaser is a decoy and shall display the decoy to the person in charge of the establishment." (Assem. Bill No. 3805 (1993-1994 Reg. Sess.) § 4, as amended Apr. 12, 1994.)

Failure to observe the required procedures was a defense to any prosecution or accusation proceeding. (Assem. Bill No. 3805 (1993-1994 Reg. Sess.) § 4, as amended Apr. 12, 1994.)

The bill was amended several times and was eventually enacted amending section 25658. Section 25658, subdivision (f), permits decoy buy operations using persons under 21 years of age and grants immunity to those decoys. It contains no requirements for carrying out decoy buys but directs ABC to adopt guidelines for such operations.[4]

In responses to the directive of section 25658, subdivision (f), ABC adopted Regulations section 141, which reads:

---

[4]Section 25658, subdivision (f), states: "Persons under the age of 21 years may be used by peace officers in the enforcement of this section to apprehend licensees, or employees or agents of licensees, who sell alcoholic beverages to minors. Notwithstanding subdivision (b), any person under the age of 21 years who purchases or attempts to purchase any alcoholic beverage while under the direction of a peace officer is immune from prosecution for that purchase or attempt to purchase an alcoholic beverage. Guidelines with respect to the use of persons under the age of 21 years as decoys shall be adopted and published by the department in accordance with the rulemaking portion of the Administrative Procedure Act (Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code). Law enforcement-initiated minor decoy programs in operation prior to the effective date of regulatory guidelines adopted by the department shall be authorized as long as the minor decoy displays to the seller of alcoholic beverages the appearance of a person under the age of 21 years. This subdivision shall not be construed to prevent the department from taking

"Minor Decoy Requirements.

"(a) A law enforcement agency may only use a person under the age of 21 years to attempt to purchase alcoholic beverages to apprehend licensees, or employees or agents of licensees who sell alcoholic beverages to minors (persons under the age of 21) and to reduce sales of alcoholic beverages to minors in a fashion that promotes fairness.

"(b) The following minimum standards shall apply to actions filed pursuant to Business and Professions Code Section 25658 in which it is alleged that a minor decoy has purchased an alcoholic beverage:

"(1) At the time of the operation, the decoy shall be less than 20 years of age;

"(2) The decoy shall display the appearance which could generally be expected of a person under 21 years of age, under the actual circumstances presented to the seller of alcoholic beverages at the time of the alleged offense;

"(3) A decoy shall either carry his or her own identification showing the decoy's correct date of birth or shall carry no identification; a decoy who carries identification shall present it upon request to any seller of alcoholic beverages;

"(4) A decoy shall answer truthfully any questions about his or her age;

"(5) Following any completed sale, but not later than the time a citation, if any, is issued, the peace officer directing the decoy shall make a reasonable attempt to enter the licensed premises and have the minor decoy who purchased alcoholic beverages make a face to face identification of the alleged seller of the alcoholic beverages.

"(c) Failure to comply with this rule shall be a defense to any action brought pursuant to Business and Professions Code section 25658."

---

disciplinary action against a licensee who sells alcoholic beverages to a minor decoy prior to the department's final adoption of regulatory guidelines. After the completion of every minor decoy program performed under this subdivision, the law enforcement agency using the decoy shall notify licensees within 72 hours of the results of the program. When the use of a minor decoy results in the issuance of a citation, the notification required shall be given within 72 hours of the issuance of the citation. A law enforcement agency may comply with this requirement by leaving a written notice at the licensed premises addressed to the licensee, or by mailing a notice addressed to the licensee." (As amended by Stats. 1998, ch. 565, § 3; Stats. 1999, ch. 786, § 1.)

## 2. *Acapulco Restaurants, Inc. v. Alcoholic Beverage Control Appeals Bd.*

As we have indicated, the Appeals Board and licensees rely heavily on the decision in *Acapulco Restaurants, Inc. v. Alcoholic Beverage Control Appeals Bd., supra,* 67 Cal.App.4th 575, to support their position that Regulations section 141, subdivision (b)(5), prohibits identification of the seller by the decoy outside the premises where the sale was made.

In *Acapulco* a 19-year-old decoy sat at a restaurant bar and ordered a beer. Without requesting identification the bartender served him and the decoy paid for the beverage. A police officer seated at a nearby table observed the transaction. The officer, who apparently was unaware of the requirement for a face-to-face identification of the seller by the decoy, informed the bartender she had sold beer to a minor, identified the decoy as a minor but did not have the decoy make a face-to-face identification of the seller.[5]

The restaurant was cited and its liquor license suspended by ABC for 15 days. Acapulco appealed to the Appeals Board, contending that the failure to conduct a face-to-face identification of the bartender was a complete defense. The Appeals Board rejected the argument, holding that since the officer was an eyewitness to the transaction, there was no need for a face-to-face identification by the decoy. The Court of Appeal issued a writ of review and reversed. (*Acapulco Restaurants, Inc. v. Alcoholic Beverage Control Appeals Bd., supra,* 67 Cal.App.4th at p. 578.)

The court noted the requirement in Regulations section 141, subdivision (b)(5), for a postsale face-to-face identification of the seller by the decoy and the provision of Regulations section 141, subdivision (c), that a failure to comply with the requirements of Regulations section 141, subdivision (b), was a defense to any action brought pursuant to section 25685. (*Acapulco Restaurants, Inc. v. Alcoholic Beverage Control Appeals Bd., supra,* 67 Cal.App.4th at p. 579.)

The Appeals Board asked the Court of Appeal to reject the plain language of Regulations section 141, subdivision (b)(5), and instead apply a "common sense interpretation" of the regulation. Under the Appeal Board's interpretation, a face-to-face identification was only required if necessary to prevent

---

[5]The *Acapulco* opinion states the officer "identified the decoy as the minor." (*Acapulco Restaurants, Inc. v. Alcoholic Beverage Control Appeals Bd., supra,* 67 Cal.App.4th at p. 577.) It is unclear whether the officer, when the decoy was no longer present, told the bartender the customer she just served was underage or if, while the decoy was still at the bar, the officer pointed out the decoy and told the bartender the decoy was underage or made such identification when the decoy, while still in the room, was not face-to-face with the bartender.

a mistake in the description of the seller. For its part, ABC stated it had not ignored Regulations section 141, subdivision (b)(5), but had merely interpreted it. (*Acapulco Restaurants, Inc. v. Alcoholic Beverage Control Appeals Bd., supra,* 67 Cal.App.4th at pp. 579-580.)

The court rejected these arguments, stating, "To ignore a rule and the defense that arises from law enforcement's failure to comply with that rule is not a matter of 'interpretation.' What the Department has done is to unilaterally decide that [Regulations section] 141, subdivision (b)(5) applies in some situations but not others, a decision that exceeds the Department's power." (*Acapulco Restaurants, Inc. v. Alcoholic Beverage Control Appeals Bd., supra,* 67 Cal.App.4th at p. 580.)

The court stated: "Since it is undisputed that no attempt (reasonable or otherwise) was made to reenter Acapulco's premises (or remain on those premises) so that the decoy who purchased the beer could make a face-to-face identification of the bartender, and since it is undisputed that subdivision (c) of [Regulations section] 141 provides a defense when there is a failure to comply with the requirements of [Regulations section] 141, it follows that Acapulco's suspension cannot stand." (*Acapulco Restaurants, Inc. v. Alcoholic Beverage Control Appeals Bd., supra,* 67 Cal.App.4th at p. 581-582, fn. omitted.)

Importantly, the court went on to state: "The concession in this case that no attempt was made to comply with [Regulations section] 141, subdivision (b)(5), makes it unnecessary to decide what would constitute a sufficient effort to reenter or what constitutes a face-to-face identification by the decoy." (*Acapulco Restaurants, Inc. v. Alcoholic Beverage Control Appeals Bd., supra,* 67 Cal.App.4th at p. 582, fn. 8.)

## 3. *Analysis*

In the present case the police officer was aware of and intended to comply with Regulations section 141, subdivision (b)(5), and a face-to-face identification of the seller was made by the decoy. We must, therefore, confront the issue specifically not addressed in *Acapulco,* i.e., what constitutes the face-to-face identification required by Regulations section 141, subdivision (b)(5). We conclude that while the section requires a face-to-face identification of the seller by the decoy, it does not require the identification to take place inside the premises where the sale was made.

Generally, the same sections of construction and interpretation applicable to statutes are used in the interpretation of administrative regulations. (*Schmidt v. Foundation Health* (1995) 35 Cal.App.4th 1702, 1710-1711 [42 Cal.Rptr.2d 172].) The interpretive task is to determine the intent

of the adopting authority. We look first at the language of the regulation. If its words, given their usual and ordinary meaning, are clear and unambiguous, we presume the adopting authority meant what it said and the plain language of the regulation applies. If the words are unclear or ambiguous, we examine the context in which the language appears using the interpretation that best harmonizes the statute internally and with related statutes. We consider the core objective of the regulation (see *People v. Superior Court* (*Zamudio*) (2000) 23 Cal.4th 183, 192-193 [96 Cal.Rptr.2d 463, 999 P.2d 686]) and its history and background. (See *Kraus v. Trinity Management Services, Inc.* (2000) 23 Cal.4th 116, 129 [96 Cal.Rptr.2d 485, 999 P.2d 718].) If possible, every word, sentence and phrase of a regulation is given significance. (*Phelps v. Stostad* (1997) 16 Cal.4th 23, 32 [65 Cal.Rptr.2d 360, 939 P.2d 760].) Regulations are not interpreted in a manner that results in absurd consequences or defeats the core purpose of their adoption. (See *People v. Souza* (1993) 15 Cal.App.4th 1646, 1652 [19 Cal.Rptr.2d 731].) "The contemporaneous administrative construction of a regulation by the agency charged with its enforcement and interpretation is entitled to great weight. Accordingly, courts generally will not depart from such construction unless it is clearly erroneous or unauthorized." (*Maples v. Kern County Assessment Appeals Bd.* (2002) 96 Cal.App.4th 1007, 1015 [117 Cal.Rptr.2d 663].)

▮ We begin with the observation that Regulations section 141, subdivision (b)(5), as a device for directing the conduct of peace officers, could be better drafted. It seems to assume for instance that the peace officer will be outside the premises during the sale. However, as *Acapulco* notes, the section, while not so stating, must also mean "remain on those premises" since in some situations, like that in *Acapulco*, the officer is at all times on the premises. (See *Acapulco Restaurants, Inc. v. Alcoholic Beverage Control Appeals Bd., supra,* 67 Cal.App.4th at p. 581.) Surely the section does not require an officer already present to leave and then, in some comic opera fashion, return. The use of the word "enter" seems to arise from an assumption concerning the usual mode of decoy buy operations, i.e., the officer remaining outside the premises while the sale is transacted. (See generally *id.* at p. 580.)

We also note the language of Regulations section 141, subdivision (b)(5), gives direction to the officer, not the decoy. The section states: "the *peace officer* directing the decoy shall make a reasonable attempt to enter the licensed premises." (Italics added.) Nowhere does the section expressly direct reentry by the decoy once the decoy has exited the premises. The entry by the peace officer is in order to "have the minor decoy . . . make a face to

face identification of the alleged seller." While the peace officer is directed to "have" a face-to-face identification, Regulations section 141, subdivision (b)(5), does not address the location or manner of such identification.

We conclude the language of Regulations section 141, subdivision (b)(5), only requires the peace officer to enter or remain on the premises *to arrange* a face-to-face identification. The literal terms of the section leave the location of the identification to the discretion of the peace officer. Given the variety of circumstances surrounding the sale of alcohol, such discretion is necessary. For example, an officer might conclude for his or her own safety or the safety of the decoy that the decoy should not reenter the premises. An officer might also defer to an owner's request that patrons not witness a public accusation.

The history of Regulations section 141, subdivision (b)(5), supports our interpretation of the language. Committee reports concerning Assembly Bill No. 3805 (1993-1994 Reg. Sess.) noted a conflict between alcoholic beverage retailers and city governments concerning the nature of decoy buy operation guidelines. Retailers sought strict and confining guidelines, while cities desired no regulation or at least more general and flexible guidelines. A central concern of the retailers was the claim that overzealous police departments intentionally used decoys who did not appear to be underage. (Assem. Com. on Governmental Organization, Analysis of Assem. Bill No. 3805 (1993-1994 Reg. Sess.); Sen. Com. on Governmental Organization, Analysis of Assem. Bill No. 3805 (1993-1994 Reg. Sess.); Sen. Com. on Judiciary, Analysis of Assem. Bill No. 3805 (1993-1994 Reg. Sess.).)

The committee reports noted ABC already had nonbinding guidelines for conducting buy operations. Those guidelines suggested notifying retailers by mail or newspaper of possible buy operations, that the decoy be 18 or 19 years of age and appear to be well under 21 years of age, a male decoy should not be large in stature or have a beard or mustache, a female decoy should not use makeup or wear jewelry, the decoy should be viewed by an ABC investigator and photographed, busy sales hours be avoided and the decoy be kept under the constant surveillance of an officer. (Assem. Com. on Governmental Organization, Analysis of Assem. Bill No. 3805 (1993-1994 Reg. Sess.); Sen. Com. on Governmental Organization, Analysis of Assem. Bill No. 3805 (1993-1994 Reg. Sess.); Sen. Com. on Judiciary, Analysis of Assem. Bill No. 3805 (1993-1994 Reg. Sess.).)

There is nothing in the language of the Regulations section 141, subdivision (b)(5), in the history of section 25658, subdivision (f), or in the

arguments advanced by the Appeals Board that suggests the section was written to require any particular kind of identification procedure except that it be face-to-face. There is no suggestion the section was promulgated to correct identification procedures which resulted in a history of misidentification of sellers. Indeed, there is no suggestion that correct identification of sellers by decoys presented any problem whatsoever.

We note that single-person show-ups are not inherently unfair. (*In re Carlos M.* (1990) 220 Cal.App.3d 372, 386 [269 Cal.Rptr. 447].) While an unduly suggestive one-person show-up is impermissible (*ibid.*), in the context of a decoy buy operations, there is no greater danger of such suggestion in conducting the show-up off, rather than on, the premises where the sale occurred.

We conclude that while the identification of the seller is of obvious importance, Regulations section 141, subdivision (b)(5), was primarily designed to deal with a different issue. The core rationale for the creation of binding sections concerning the conduct of buy operations was to allow such buys in a manner fair to sellers. Regulations section 141, subdivision (b)(1)-(3), requires that the decoy reasonably appear to be underage and act in a manner consistent with that appearance. Regulations section 141, subdivision (b)(5), ensures—admittedly not as artfully as it might—that the seller will be given the opportunity, soon after the sale, to come "face-to-face" with the decoy. For reasons left to the sound discretion of the peace officer alone, or in conjunction with the business owner, Regulations section 141, subdivision (b)(5), does not require the identification be done on the premises where the sale occurred. The officer in this case complied with the face-to-face confrontation requirements of Regulations section 141, subdivision (b)(5).

The decision of the Appeals Board is annulled. The matter is remanded to the Appeals Board for further proceedings consistent with this opinion reinstating the license suspension.

Nares, P. J., and McDonald, J., concurred.