[No. F049849. Fifth Dist. June 26, 2007.]

CALIFORNIA MINERALS, L.P., Plaintiff and Appellant, v.
COUNTY OF KERN, Defendant and Respondent.

COUNSEL

Downey Brand, Barbara L. Berg; Day Carter & Murphy and Tracy K. Hunckler for Plaintiff and Appellant.

B. C. Barmann, Sr., County Counsel, and Jerri S. Bradley, Deputy County Counsel, for Defendant and Respondent.

OPINION

LEVY, J.—This appeal concerns the valuation of oil and gas mineral property interests for the purpose of determining ad valorem taxes. Appellant, California Minerals, L.P., a Texas limited partnership (California Minerals), challenges the enrolled base year value of mineral rights it purchased in nonproducing property. This interest was assessed at the purchase price allocated to that acreage. According to California Minerals, this value should be zero because "proved" oil and gas reserves, as defined by the applicable State Board of Equalization (SBE) rule, have not yet been established.

As discussed below, the taxable value of a real property interest is presumptively the purchase price. California Minerals had the burden of establishing a different value by a preponderance of the evidence and failed to do so. Accordingly, the judgment in favor of respondent, County of Kern

(County), on California Minerals's complaint for refund of taxes will be affirmed.

## BACKGROUND

In 1998, Peter Paul Petroleum Company (Peter Paul) purchased the mineral rights in certain properties located in 19 California counties from Chevron U.S.A., Inc. (Chevron). This interest included "all rights, privileges, benefits and powers conferred upon the holder of such mineral rights" but excluded "the right to use the surface for open pit mining, quarrying, strip mining." The parties expressly agreed that the assets did not include any surface rights, other than "rights of surface access for the purpose of exploring for, developing, producing, transporting and selling minerals" from the property. Personal property or fixtures associated with the property, wellbores, water, and any existing oil, gas or mineral production from the property were also excluded. The purchase price was $17 million for this mineral interest in approximately 212,000 acres.

When Peter Paul acquired the mineral rights, there was no engineering or geologic data to support the recovery of any oil and gas reserves from the property. The purchase price was determined by using a "Monte Carlo" probability analysis based on information from analog fields located in Kings and Fresno Counties. There was no evidence of proved reserves, but rather only a probability that reserves existed. Peter Paul considered the overall purchase price to be a fair market value for the rights acquired.

The sale agreement allocated $6,009,465 of the purchase price to the Kern County parcels on a per acre basis. This allocation was made without regard to the possible minerals under those parcels.

Peter Paul assigned its rights under the agreement to California Minerals, one of its subsidiaries. California Minerals leases potential oil and gas properties to exploration and development companies.

California Minerals submitted a "Preliminary Change of Ownership Report" to the Kern County Assessor (Assessor) describing the Kern County property interest as nonproducing minerals purchased for $6,009,465. The Assessor enrolled the base year value of the property (1998–1999) at the purchase price under Revenue and Taxation Code section 110[1] (the purchase price is rebuttably presumed to be the fair market value). The Assessor did

---

[1] All further statutory references are to the Revenue and Taxation Code.

not apply SBE rule 468 (Cal. Code Regs., tit. 18, § 468)[2] pertaining to the valuation of oil- and gas-producing properties. The Assessor took the position that rule 468 only applied to properties that were currently producing oil and gas.

California Minerals filed an application for changed assessment based on its claim that the base year value was incorrect. According to California Minerals, rule 468 applied and, since there were no proved reserves, there was no assessable value.

Following an evidentiary hearing, the assessment appeals board (AAB) denied California Minerals's application. The AAB found that the Kern County purchase price had been fairly allocated based on relative market value and was entitled to the section 110 purchase price presumption. The AAB further concluded that California Minerals had neither shown this presumption to be inapplicable to the subject properties nor rebutted the presumption. The AAB noted that California Minerals had "not offered competent evidence establishing some other (lower or higher) fair market value."

California Minerals also filed applications for changed assessments for the tax years 1999–2000 through 2002–2003. Pursuant to stipulation, these appeals were denied without any further proceedings.

California Minerals paid all property taxes levied and filed a claim for refund with the County. The claim was denied and California Minerals filed the underlying action for refund in the superior court.

The trial court ruled that the AAB's interpretation of section 110 and the applicable SBE rules was correct. The court summarized its ruling as follows: "Briefly stated, the statutory and regulatory scheme requires the assessor to adopt the purchase price as the presumed assessed value in the absence of evidence to choose another value as long as it meets the tests of fair market value (freely acting, knowledgeable parties negotiating at arms length, etc). A taxpayer may rebut this presumption by the production of a preponderance of competent evidence of another value. SBE Rules 468 and 469 do not exempt oil and gas or other mineral interests from this presumption nor substitute a scheme of taxation only for proven reserves. Those rules merely allocate the proper value in the year of acquisition between (1) various kinds of proven mineral reserves, and (2) the balance of the value represented by other

---

[2] All rule references are to California Code of Regulations, title 18.

portions of the bundle of rights acquired. In subsequent years, the rules direct the assessor to adjust the proven reserves portion of the taxable value based on new information. It is possible such information in subsequent years could also affect the assessment of the remaining value if it shows other parts of the bundle of rights originally acquired are changed."

California Minerals challenges this ruling on several grounds. First, California Minerals argues that the valuation should be based only on oil and gas exploration and development, the highest and best use of the property. California Minerals further contends that it rebutted the purchase price presumption because the undisputed evidence demonstrates that it purchased no rule 468 proved reserves. According to California Minerals, this should have been sufficient to establish that there was no assessable base year value for the speculative interests that it acquired.

## DISCUSSION

### 1. *Standard of review.*

In reviewing a property tax assessment, the court must presume the assessor properly performed his or her duty and that the assessment was both regularly and correctly made. (*Texaco Producing, Inc. v. County of Kern* (1998) 66 Cal.App.4th 1029, 1046 [78 Cal.Rptr.2d 433].) The burden is on the taxpayer to prove the property was improperly assessed. (*Ibid.*)

When the taxpayer claims a valid valuation method was improperly applied, the court may overturn the assessment appeals board's decision only if there is no substantial evidence in the administrative record to support it. (*Maples v. Kern County Assessment Appeals Bd.* (2002) 96 Cal.App.4th 1007, 1013 [117 Cal.Rptr.2d 663].) However, if the taxpayer challenges the validity of the valuation method itself, the court is faced with a question of law. (*Ibid.*)

The parties disagree on the correct standard of review for this case. California Minerals contends that, because its appeal challenges the validity of the method used to assess the mineral rights and the proper interpretation and application of several cases, statutes and regulations, it is subject to independent review. In contrast, the County argues that the question before this court is simply whether the result reached was correct and thus the AAB's decision must be upheld if supported by substantial evidence.

As noted by the trial court, at issue in this matter is the interplay of the statutory "purchase price presumption" and the SBE rules. Such an analysis, i.e., the interpretation of a statute and regulations, is a question of law. (*Shell Western E & P, Inc. v. County of Lake* (1990) 224 Cal.App.3d 974, 980 [274 Cal.Rptr. 313].) Further, the material facts are not in dispute. In such a situation, what might otherwise appear to be a factual challenge, and therefore subject to substantial evidence review, is actually a legal challenge. (*Maples v. Kern County Assessment Appeals Bd., supra,* 96 Cal.App.4th at p. 1013.) Accordingly, the appeal is subject to our independent review.

2. *The absence of "proved reserves" does not in itself rebut the purchase price presumption.*

 a. *Appraisal of oil and gas property.*

California Constitution, article XIII, section 1, provides that all property "is taxable and shall be assessed at the same percentage of fair market value." "Fair market value" or "full cash value" is "the appraised value of real property when purchased, newly constructed, or a change in ownership has occurred after the 1975 assessment." (Cal. Const., art. XIII A, § 2, subd. (a).)

■ The "full cash value" or "fair market value" of real property is the "purchase price paid in the transaction unless it is established by a preponderance of the evidence that the real property would not have transferred for that purchase price in an open market transaction." (§ 110, subd. (b).) The purchase price is "rebuttably presumed to be the 'full cash value' or 'fair market value' if the terms of the transaction were negotiated at arms length between a knowledgeable transferor and transferee neither of which could take advantage of the exigencies of the other." (*Ibid.*) In other words, the purchase price establishes a presumptive fair market value and the burden of proof is on the taxpayer to establish a different fair market value. (*Maples v. Kern County Assessment Appeals Bd.* (2002) 103 Cal.App.4th 172, 186 [126 Cal.Rptr.2d 585].)

■ A landowner does not have title to the oil and gas that may underlie the property. (*Lynch v. State Bd. of Equalization* (1985) 164 Cal.App.3d 94, 102 [210 Cal.Rptr. 335].) Rather, the landowner has the exclusive right to drill for oil and gas and to retain all substances brought to the surface. (*Ibid.*) This right to remove oil and gas from the ground is a taxable real property interest. (*Id.* at p. 103.) However, due to the unique nature of this property interest, valuation is especially difficult. (*Ibid.*)

Before the voters adopted California Constitution, article XIII A in 1978, as Proposition 13, tax assessors could reappraise oil and gas fields annually. (*Maples v. Kern County Assessment Appeals Bd., supra*, 103 Cal.App.4th at p. 187.) As reserves were discovered and brought into production, the fields were reappraised to capture the new value on the tax rolls. (*Ibid.*)

However, under Proposition 13, annual reappraisals of real property are not permitted. Rather, a base year value must be established that can then be increased by no more than 2 percent annually unless the property is sold or there is new construction on the property. (*Amador Valley Joint Union High Sch. Dist. v. State Bd. of Equalization* (1978) 22 Cal.3d 208, 235 [149 Cal.Rptr. 239, 583 P.2d 1281].) Accordingly, in order to fit the intrinsically unknown value of oil and gas reserves into the base year value requirement, without forfeiting the ability to tax such property by freezing the base year value of new or unexplored oil and gas fields at zero, the taxing authorities needed to reconsider the appraisal technique for oil and gas property. (*Maples v. Kern County Assessment Appeals Bd., supra*, 103 Cal.App.4th at p. 187.)

■ In the wake of Proposition 13, the SBE adopted rule 468 to establish valuation principles for the taxation of oil and gas interests. (*Exxon Mobil Corp. v. County of Santa Barbara* (2001) 92 Cal.App.4th 1347, 1355 [112 Cal.Rptr.2d 751].) This rule "uses an '[appraisal] unit [valuation consisting] of four components: proved reserves; wells, casings, and parts thereof; land (other than mineral interests); and improvements.' [Citation.]" (*Ibid.*) It contemplates that the base year value of the nonpetroleum interest is fixed in accordance with Proposition 13, but that the petroleum interest is subject to revaluation based on changes in proved reserves. (*Maples v. Kern County Assessment Appeals Bd., supra*, 103 Cal.App.4th at p. 193.)

Rule 468, subdivision (b), provides that the "market value" of an oil and gas mineral property interest is determined "by estimating the value of the volumes of proved reserves." Proved reserves are those reserves that "geological and engineering information indicate with reasonable certainty to be recoverable in the future, taking into account reasonably projected physical and economic operating conditions." (*Ibid.*)

The principles and procedures for establishing the base year value of the property are set forth in rule 468, subdivision (c). This subdivision notes that the "unique nature of oil and gas property interests requires the application of specialized appraisal techniques designed to satisfy the requirements of Article XIII, Section 1, and Article XIII A, Section 2, of the California Constitution."

However, this subdivision does not refer to "proved reserves." Rather, it uses the terms "reserves," "mineral reserves," and "taxable reserves."

■ Under rule 468, subdivision (c)(1): "A base year value (market value) of the property shall be estimated as of the lien date 1975 or as of the date a change in ownership occurs subsequent to lien date 1975. Newly constructed improvements and additions in reserves shall be valued as of the lien date of the year for which the roll is being prepared. Base year values shall be determined using factual market data such as prices and expenses ordinarily considered by knowledgeable and informed persons engaged in the operation, buying and selling of oil, gas and other mineral-producing properties and the production therefrom. Once determined, a base year value may be increased no more than two percent per year." However, the base year reserve values must be adjusted annually. These adjustments compensate for the value of depleted reserves and the additions to reserves established in a given year by discovery, construction of improvements, or changes in economic conditions. (Rule 468, subd. (c)(2), (3).)

■ Rule 468, subdivision (c)(5) provides for the valuation of land (other than mineral reserves) and improvements. These values remain at their factored base year value except when the market value of the appraisal unit, i.e., land, improvements and reserves, is less than the current taxable value base of the same unit. (Rule 468, subd. (c)(6).)

As noted above, when California Minerals acquired the Kern County property interest there was no engineering or geologic data to support the recovery of any oil and gas reserves from the property, i.e., there was no evidence of proved reserves. Rather, information from analog fields located in Kings and Fresno Counties was used to determine the purchase price. Based on this absence of evidence, California Minerals contends that the base year value of its acquisition should be zero.

However, under section 110, subdivision (b), the approximately $6 million purchase price established the presumptive fair market value for the Kern County property interest. Accordingly, the burden was on California Minerals to prove a different fair market value. As noted above, the AAB and the trial court concluded that California Minerals did not meet this burden. Therefore, the pivotal issue on appeal is whether, as a matter of law, California Minerals provided sufficient evidence to establish its claim that the base year value of the Kern County mineral interest is zero.

b. *Oil and gas production is the highest and best use of the property.*

California Minerals purchased all subsurface minerals, including oil and gas, and the right of surface access for the purpose of exploring for,

developing, producing, transporting and selling such minerals. Nevertheless, California Minerals's analysis begins with the argument that the valuation method for its mineral interest must be limited to the rules for oil- and gas-producing properties, i.e., rule 468. According to California Minerals, this is the highest and best use of the property in that the exploration and development of minerals other than oil and gas is neither likely nor financially probable.

■ Real property appraisals "must be based on the most productive, or highest and best use of the property." (Assessors' Handbook (Jan. 2002) § 501, p. 5.) The Assessor's appraiser concluded, based on the evidence and review of the documents, that the buyers considered the exploration and development of oil and gas to be the most valuable aspect of the property rights. He testified that the highest and best use of the property was oil and gas production, not other mineral production. In fact, by excluding the right to use the surface for open pit mining, quarrying, and strip mining, the seller effectively precluded California Minerals from extracting anything but oil and gas. Thus, although California Minerals purchased the right to all subsurface minerals, in actuality it only purchased the right to explore for, develop, and produce oil and gas. Therefore, the AAB and the trial court should not have considered the right to explore for subsurface minerals other than oil and gas. A use that is not reasonably probable should be excluded from the valuation. (*McDonnell Douglas Corp. v. County of Los Angeles* (1990) 219 Cal.App.3d 715, 724–725 [268 Cal.Rptr. 294].)

■ Nevertheless, this conclusion does not affect the ultimate analysis of the case. The fair market value concept as expressed in section 110 includes the assumption that sales prices reflect the highest and best use. As suggested in rule 2, subdivision (a), market value means the sales price in a transaction " 'between parties who have knowledge of the uses to which the property may be put, both seeking to maximize their gains.' " (Assessors' Handbook (Dec. 1998), § 502, p. 9.) Thus, the purchase price of the Kern County mineral interest reflects oil and gas production as the highest and best use. The issue remains whether California Minerals rebutted the purchase price presumption of value.

 c. *California Minerals did not rebut the purchase price presumption.*

■ Although the purchase price is presumably the fair market value, it is only a starting point in appraising the property. (*Dennis v. County of Santa Clara* (1989) 215 Cal.App.3d 1019, 1028 [263 Cal.Rptr. 887].) SBE rules may be used to establish a different value. (*Id.* at pp. 1030–1031.) For oil and

gas properties, rule 468 provides the applicable method. (*Maples v. Kern County Assessment Appeals Bd., supra,* 103 Cal.App.4th at p. 193.)

As outlined above, rule 468, subdivision (b), provides that the "market value" of an oil and gas mineral property interest is determined "by estimating the value of the volumes of proved reserves." Based on this definition, California Minerals takes the position that its Kern County mineral interests should be valued at zero. Although there is a probability that reserves exist, that probability has not been explored. Accordingly, there is no engineering or geologic data to support the existence of proved reserves. In other words, reserves have neither been proved nor disproved to exist.

■ *Maples v. Kern County Assessment Appeals Bd., supra,* 103 Cal.App.4th 172, concerned the valuation of oil- and gas-producing property that contained both "proved" and "unproved" reserves. The property owner argued that the unproved reserves were nontaxable property and that rule 468 precluded the assessor from assigning any value whatsoever to those reserves. This court, however, found that contention to be "untenable." (103 Cal.App.4th at p. 193.) Rather, rule 468 directs the assessor to make a determination of the fair market value of all reserves using the criteria that would be used by knowledgeable buyers and sellers of properties bearing such reserves. (103 Cal.App.4th at p. 194.) Moreover, although discounted to reflect a riskier investment, " 'probable' " and " 'possible' " reserves are "considered by 'knowledgeable and informed persons' in valuing a petroleum property for purchase and sale." (*Id.* at p. 195.)

Further, in focusing on the "proved reserves" component set forth in subdivision (b), California Minerals has neglected the other rule 468 valuation principles. As noted above, oil and gas interests are taxed in terms of an "appraisal unit" that includes proved reserves, land (other than mineral interests), and improvements. (*Exxon Mobil Corp. v. County of Santa Barbara, supra,* 92 Cal.App.4th at p. 1355.) Proved reserves are not the sole measure of fair market value.

In support of its claim of zero value, California Minerals quotes a footnote in *Maples v. Kern County Assessment Appeals Bd., supra,* 103 Cal.App.4th 172, wherein the court stated that "Reserves are not taxed at all. Rather, proved reserves, as defined by law, are a tool of measurement by which the right to remove *all* oil and gas from the land is valued . . . ." (*Id.* at p. 186, fn. 4.) California Minerals interprets this statement as restricting the value of the oil and gas mineral rights it purchased to the volumes of rule 468 proved reserves.

 However, California Minerals purchased more than the right to remove oil and gas from the land. It also purchased the right to *explore for* and *develop* the oil and gas reserves. Such rights fall under the definition of "land." Land includes the right to use the property for all lawful purposes. (*Texas Company v. Moynier* (1933) 129 Cal.App. 738, 741 [19 P.2d 280].)

California Minerals notes that rule 469, the SBE rule for valuing mining properties other than oil, gas, and geothermal resources, values the right to enter in or upon land for the purpose of exploration, development or production of minerals separately. Thus, California Minerals argues, it is clear that the SBE knew how to promulgate a rule for separately taxing exploratory and development rights prior to the existence of proved reserves, but chose not to with oil and gas interests. Therefore, the right to explore for and develop oil and gas should not be taxed as "land."

Contrary to California Minerals's position, rule 468's silence on the right to explore and develop oil and gas is not dispositive. This omission is not equivalent to a declaration that exploration and development rights are not to be considered in determining the base year value. Rather, such rights would logically be considered by knowledgeable and informed persons engaged in the "buying and selling of oil, gas and other mineral-producing properties and the production therefrom." (Rule 468, subd. (c)(1).) Here, the knowledgeable and informed buyer, through its chairman and vice-president, considered the overall sales price at the time of acquisition to be a "fair purchase price" and "fair market value." Under these circumstances, finding that rule 468 required the Assessor to establish the base year value at zero due solely to a lack of evidence of "proved reserves" would be contrary to section 110. None of the acquired mineral interests had "proved reserves" and yet the knowledgeable and informed buyer considered the price paid to be the fair market value.

California Minerals also relies on a passage in *Maples v. Kern County Assessment Appeals Bd., supra*, 103 Cal.App.4th 172 regarding a hypothetical speculative purchase. The court stated: "We conclude [rule 468] represents an implicit recognition by SBE that, on occasion, a purchaser may buy an oil and gas interest on a purely speculative basis despite the absence of any data supporting a conclusion that recovery of petroleum products from the land is reasonably certain under any foreseeable circumstances. In its determination not to attempt to place a taxable value on such speculation in petroleum interests, SBE again has made specific to this industry the general rule in fair market value determinations that such value is premised on objective market conditions, not merely on the purchase price paid by an idiosyncratic or otherwise unusual buyer." (*Id.* at pp. 196–197.) According to California

Minerals, it was just such an unusual or idiosyncratic buyer and thus the price paid for this "purely speculative" acquisition should not control.

However, this passage, while dicta, is merely an acknowledgement that the value of oil and gas properties, like any other properties, must be based on objective data. (Cf. *Dennis v. County of Santa Clara, supra,* 215 Cal.App.3d at p. 1030.) As noted by the *Maples* court, "rule 468 does not attempt to create an exception to the fair market value basis of taxation generally established in California Constitution, article XIII, section 1." (*Maples v. Kern County Assessment Appeals Bd., supra,* 103 Cal.App.4th at pp. 201–202.)

Here, there was no evidence that the original buyer, California Minerals's parent company, was "idiosyncratic" or "unusual." Rather, the buyer's chairman testified that he had over 30 years of professional experience in the acquisition and development of oil-producing properties. The negotiations with Chevron lasted approximately two years and included other parties seeking to purchase the same property. Further, the buyer's chairman and vice-president both considered the total sales price to be the fair market value of the mineral interest. Thus, the purchase was analyzed and negotiated by people who were knowledgeable and informed about, and engaged in, the business of buying and selling and operating oil and gas properties. Accordingly, this acquisition cannot be considered to have been speculative or idiosyncratic to the point of not having any fair market value.

In sum, California Minerals had the burden of proving a fair market value different from the purchase price by a preponderance of the evidence. However, the only evidence California Minerals presented was that no evidence of proved reserves had been established at the time of acquisition. In other words, reserves had not been proved or disproved. Rather, the reserves were "probable" or "possible." This absence of evidence is not equivalent to affirmative evidence of the property's fair market value. As discussed above, "proved reserves" is not the only value component of an oil and gas mineral interest. Moreover, "knowledgeable and informed persons" testified that the purchase price was the fair market value. This is contrary to California Minerals's claim that the value of the oil and gas mineral interest was zero. Accordingly, the Assessor correctly determined the base year value of the property interest to be its purchase price. California Minerals did not rebut the section 110 purchase price presumption. Subsequent tax year valuations will be subject to adjustments under rule 468, subdivision (c)(4) and (6).

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to respondent.

Vartabedian, Acting P. J., and Harris, J., concurred.