[No. H029347. Sixth Dist. June 13, 2007.]

PETER GEORGIEV, Plaintiff and Appellant, v.
COUNTY OF SANTA CLARA, Defendant and Respondent.

1430

COUNSEL

DiNapoli & Sibley, John DiNapoli; The Heritage Law Group and Roger D. Wintle for Plaintiff Appellant.

Ann Miller Ravel, County Counsel, James J. Rees and Marcy L. Berkman, Deputy County Counsel, for Defendant and Respondent.

OPINION

**MIHARA, Acting P. J.**—Appellant Peter Georgiev filed an action against respondent County of Santa Clara (the County) seeking a refund of property taxes on his residence. He claimed that the Santa Clara County Assessment Appeals Board (AAB) abused its discretion in finding that the second story addition to his residence was 100 percent complete on December 31, 1996, rather than being 100 percent complete in July 1995, when the building inspector gave a "final o.k." to the addition. The superior court granted the County's summary judgment motion on the grounds that Georgiev could not establish that the AAB abused its discretion and Georgiev's contentions were barred by judicial estoppel. We affirm the judgment.

## I. Background

In December 1993, Georgiev obtained a permit and began construction of a second-story addition to his then 1,356-square-foot residence in San Jose. In July 1995, the City of San Jose building department gave its "final o.k." to Georgiev's second-story addition. The second-story addition increased the size of the residence to 3,176 square feet.

Georgiev's property was assessed at a value of $149,204 as of the March 1, 1995 "lien date."[1] In October 1995, Georgiev filed a petition to the AAB challenging the 1995 assessment. Georgiev's property was assessed at a value of $166,397 as of the March 1, 1996 lien date. Georgiev filed another petition to the AAB challenging the 1996 assessment.

The AAB held a hearing on Georgiev's 1995 and 1996 petitions in January 1997. The assessor took the position that the addition had been 60 percent complete as of March 1, 1995, and recommended a $2,040 reduction in total value for the 1995 assessment. The assessor maintained that the addition was 75 percent complete as of March 1, 1996, and recommended no reduction in total value.

Georgiev testified at the 1997 hearing that the second story addition "is not completed" and "not used yet." Georgiev testified that the addition was, at most, 60 percent complete as of March 1, 1995, and that the assessor was "about correct" that the addition was 75 percent complete as of March 1,

---

[1] " 'Lien date' is the time when taxes for any fiscal year become a lien on property." (Rev. & Tax. Code, § 117.)

1996. Georgiev testified that the addition was 75 percent complete as of December 31, 1995. He believed that the addition was more than 75 percent complete by March 1996, because "I had to put only a handrail on the stairs and a few other minor things" to complete it. But "it was not completed 100 percent." Georgiev testified: "At the moment, for my own purposes, the second floor addition is not completed because it doesn't have carpeting, the bathroom needs some repair, and a few other small things. So that the second floor edition [sic] is not occupied . . . ."

Georgiev's primary contention at the January 1997 hearing was that the assessor had erred in reassessing the value of his home without the addition and then adding the value of the addition rather than assessing only the value of the addition and adding that value to the previously assessed value of his home.[2] The AAB rejected Georgiev's contention, accepted the assessor's recommendations, and reduced the 1995 valuation by $2,040 to $147,164.

Georgiev's property was assessed at a value of $196,798 as of the January 1, 1997 lien date.[3] In September 1997, Georgiev filed a petition to the AAB seeking a reduction in the assessed value to $131,798. Georgiev's 1997 petition was heard by the AAB in September 1998. The assessor bore the burden of proof at the hearing because the property was owner occupied. (Rev. & Tax. Code, § 167, subd. (a).)

At the 1998 hearing, Georgiev testified that the addition "was completed and okayed by the Building Department on July 7, 1995," and he "submitted a copy of the Application for Permits which was signed off." Nevertheless, he testified that the addition "has not been completed as he has problems with

---

[2] "When real property, or a portion thereof, is newly constructed after the 1975 lien date, the assessor shall ascertain the full value of such 'newly constructed property' as of the date of completion. This will establish a new base year full value for only that portion of the property which is newly constructed, whether it is an addition or alteration. The taxable value on the total property shall be determined by adding the full value of new construction to the taxable value of preexisting property reduced to account for the taxable value of property removed during construction. The full value of new construction is only that value resulting from the new construction and does not include value increases not associated with the new construction." (Cal. Code Regs., tit. 18, div. 1, ch. 4, art. 4, § 463, subd. (a) (hereafter Regulations).) "New construction in progress on the lien date shall be appraised at its full value on such date and each lien date thereafter until the date of completion, at which time the entire portion of property which is newly constructed shall be reappraised at its full value." (Regs., § 463, subd. (d).) Georgiev no longer claims that the assessor reassessed the value of his residence other than the addition.

[3] Lien dates changed to January from March beginning in January 1997. (Rev. & Tax. Code, § 2192; Stats. 1995, ch. 499, §§ 18, 21, p. 3866.)

the bathrooms, floors and stairs." Georgiev testified that the problems with the bathrooms, floors and stairs "would cost approximately $20,000.00 to $30,000.00 to cure" and that the addition lacked "functionality." He argued that the addition had a value of $25,000. Georgiev asserted that the "date for valuation should be July 7, 1995," the date that the building department signed off on his permit. The assessor asserted that Georgiev should be estopped from making this contention because the AAB had determined in 1997 that the addition was only 75 percent complete in March 1996.[4] The assessor claimed that the value of the addition was $120,000.

The AAB issued its decision on Georgiev's 1997 petition in February 1999. It found that Georgiev's second story addition was 100 percent complete as of December 31, 1996, and that the value of the new construction was $100,000.

In March 1999, Georgiev filed claims with the County Board of Supervisors (the Board) seeking refunds of portions of his 1995/1996, 1996/1997 and 1997/1998 real property taxes. There is nothing in the record to indicate that the Board ever responded to Georgiev's claims.

Georgiev initiated this action in 2003 by filing a petition for writ of mandate under Revenue and Taxation Code section 1611.6 seeking a remand to the AAB and a refund of overpaid taxes. He alleged that the completion date for his second story addition was July 7, 1995, rather than December 31, 1996. The County's demurrer to Georgiev's mandate petition seeking a remand to the AAB was sustained without leave to amend on the ground that it was barred by Revenue and Taxation Code section 4807. The County's demurrers to numerous amended pleadings seeking a refund of overpaid taxes were sustained with leave to amend.

Georgiev ultimately filed a fourth amended complaint seeking a refund of overpaid taxes, and the County filed an answer. The County alleged as an affirmative defense that Georgiev's action was barred by judicial estoppel. The County moved for summary judgment on the grounds that it was undisputed that the AAB had not abused its discretion and that judicial estoppel barred Georgiev's action.

---

[4] Although the record contains no transcript of the AAB's 1998 hearing on Georgiev's 1997 petition, the record does contain a copy of the AAB's five-page statement of "FINDINGS, CONCLUSIONS, AND DETERMINATION." This document recites the evidence and arguments presented by the parties at the hearing.

Georgiev opposed the County's motion and submitted his own declaration in opposition. He declared that, between July 1995 and December 1996, "I did not view the addition as completed for my own purposes because there were additional cosmetic changes that I wished to make before I began using the newly created space." He asserted that his representations at the January 1997 hearing about the completion of the addition were "done by mistake on my part and completely unintentionally." "I was using my own definition of completed to describe the Property based on my own understanding that I wished to make additional cosmetic changes or additions beyond July 1995." The County objected to Georgiev's declaration on the ground that it was outside the administrative record of the 1998 AAB proceedings, but the superior court did not rule on the evidentiary objection.

The court concluded that the County had demonstrated that Georgiev could not show that the AAB abused its discretion in finding that the addition was 100 percent complete on December 31, 1996. The court alternatively found that Georgiev's claim was barred by judicial estoppel. The County's summary judgment motion was granted. The court entered judgment for the County, and Georgiev filed a timely notice of appeal.

## II. Discussion

██ An assessment appeals board is the only factfinding body that has the legal power to "equalize" or adjust assessments of the value of real property. (*Plaza Hollister Ltd. Partnership v. County of San Benito* (1999) 72 Cal.App.4th 1, 23 [84 Cal.Rptr.2d 715].) A taxpayer may seek a reduction in the assessed value of real property by filing a petition with the assessment appeals board. (Rev. & Tax. Code, § 1604, subd. (b)(1).) If the petition is denied, the taxpayer may file a claim with the board seeking a refund, so long as the claim is filed within four years after payment of the taxes.[5] (Rev. & Tax. Code, §§ 5097, subd. (a)(2), 5140.) Because an assessment appeals board is the only body with the power to assess the value of property, a petition to the assessment appeals board is a prerequisite to a claim to the county's board of supervisors for a refund unless "the assessment is totally void as an attempt to tax property not subject to taxation, rather than merely an inaccurate assessment of the value of taxable property." (*Stenocord Corp. v. City etc. of San Francisco* (1970) 2 Cal.3d 984, 990 [88 Cal.Rptr. 166, 471 P.2d 966].)

---

[5] A taxpayer may also combine a petition for equalization with a claim for refund, but Georgiev did not do so in this case.

█  A refund claim is a prerequisite to a lawsuit seeking a refund, and the refund claim must specify the ground that forms the basis for the lawsuit. (Rev. & Tax. Code, § 5142, subd. (a) ["No recovery shall be allowed in any refund action upon any ground not specified in the refund claim"].)  **(3)**  If the refund claim is "refused," the taxpayer may file an action in superior court seeking to recover the excess taxes paid. (Rev. & Tax. Code, § 5140.) The lawsuit "shall be commenced within six months from and after the date that the board of supervisors or city council rejects a claim for refund in whole or in part." (Rev. & Tax. Code, § 5141, subd. (a).) "[I]f the board of supervisors or city council fails to mail notice of its action on a claim for refund within six months after the claim is filed, the claimant may, prior to mailing of notice by the board of supervisors or city council of its action on the claim, consider the claim rejected and bring an action under this article." (Rev. & Tax. Code, § 5141, subd. (b).) The claimant is not *required to* " 'consider the claim rejected' " after six months. (*Geneva Towers Ltd. Partnership v. City and County of San Francisco* (2003) 29 Cal.4th 769, 773 [129 Cal.Rptr.2d 107, 60 P.3d 692].) The six-month limitations period does not begin to run until either the county's board of supervisors denies the claim or the claimant "at any time" decides to consider the claim rejected and file suit. (See *id.* at pp. 774, 780.)

There are no issues in this case about the timeliness of Georgiev's petitions, his refund claims, or this lawsuit. Georgiev filed timely petitions with the AAB in 1995, 1996 and 1997 seeking assessment reductions. These petitions were denied. He filed timely refund claims with the Board in 1999. The County did not present any evidence to rebut Georgiev's allegation that the Board never responded to Georgiev's refund claims. Four years after he filed those claims, he initiated this timely lawsuit.

## A.  Georgiev's 1995 and 1996 Petitions

Georgiev filed timely petitions in 1995 and 1996 and a timely refund claim in 1999 with regard to his 1995 and 1996 property taxes. However, he cannot contend that the AAB abused its discretion by failing to identify July 1995 as the date of completion in its 1997 decision on his 1995 and 1996 petitions, because no evidence of a July 1995 completion date was introduced at the 1997 AAB hearing.[6]

---

[6] This contention does not appear in Georgiev's fourth amended complaint, the operative pleading for this appeal. His fourth amended complaint alleges only that the AAB abused its discretion in its 1999 ruling on his 1997 petition.

Georgiev's claim that the addition was completed in July 1995 depends upon his claim that the AAB was required to set, as the date of completion of his addition, the date that the building inspector gave a "final o.k." to his addition. The transcript of the 1997 AAB hearing reveals that no evidence was introduced at that hearing that there had been a July *1995* "final o.k." of Georgiev's addition by the building inspector. Instead, Georgiev repeatedly testified at the 1997 AAB hearing that the "final sign-off" had occurred in July *1996*. Georgiev testified that "by July of this year, *of '96*, for the purposes of the Assessment Board, the property was considered completed in the sense that the final—the permit was—had final sign-off. So my permit is signed off and completed as of July." (Italics added.) He also testified that, as of March 1, *1996*, "the property *wasn't signed off*, as it was not completed 100 percent . . . ." (Italics added.) In addition to testifying that the "final sign-off" had occurred in July 1996, Georgiev also testified at the 1997 AAB hearing that the addition was "75 percent completed" as of December 31, 1995, and "is not, for my purposes, is not completed presently [January 1997] because it doesn't have carpeting and some other things."

Since the only evidence presented at the 1997 AAB hearing was that the "final sign-off" had occurred in July 1996 and that the addition remained incomplete, the AAB obviously did not abuse its discretion in failing to find that the building inspector's July 1995 "final o.k." established that the date of completion for the addition was in July 1995.[7]

## B. Georgiev's 1997 Petition

At the 1998 hearing on his 1997 petition, Georgiev did introduce evidence of the building inspector's July 1995 "final o.k." He claims that the AAB was required to credit this evidence and set the date of completion for his addition as July 1995 rather than December 31, 1996. Georgiev maintains that, if the value of the addition had been assessed as of July 1995 rather than December 1996, the value would have been lower and his property taxes would be lower.[8]

---

[7] "The process of obtaining a refund is distinct from the process of seeking a reduced assessment by filing an application for equalization." (*Plaza Hollister Ltd. Partnership v. County of San Benito, supra*, 72 Cal.App.4th at p. 34.) Because only the AAB had the power to set the value of Georgiev's addition, the fact that Georgiev presented evidence of the July 1995 "final o.k." to the Board in his 1999 refund claim is irrelevant to the validity of the AAB's 1997 decision. (See *Stenocord Corp. v. City etc. of San Francisco, supra*, 2 Cal.3d at p. 990.)

[8] Although no figures are in the record, we perceive Georgiev's underlying motivation to be the increase in real property values between July 1995 and December 1996, which made the base year valuation for his addition higher.

When a taxpayer challenges an assessment on the ground that a "valid method" has been "erroneously applied," the trial court reviews the record that was before an assessment appeals board and may overturn its decision only if the board's decision was not supported by substantial evidence. (*Bret Harte Inn, Inc. v. City and County of San Francisco* (1976) 16 Cal.3d 14, 23 [127 Cal.Rptr. 154, 544 P.2d 1354].) "On the other hand, when the taxpayer challenges the validity of the valuation method itself, the trial judge is faced with a question of law." (*Ibid.*) These standards of review are the same on appeal as they are in the superior court. Since Georgiev's claim is that the AAB erroneously assessed the value of his addition, not that it utilized an invalid valuation method, the substantial evidence standard of review is the applicable one.

Georgiev relies on a statute, a regulation and certain provisions of the San Jose Municipal Code to support his claim that substantial evidence does not support the AAB's determination that the addition was complete in December 1996, rather than July 1995.

Revenue and Taxation Code section 75.12 defines the date of completion of new construction for property tax assessment purposes. "(a) For the purposes of this chapter, new construction shall be deemed completed on *the earliest of the following dates*: [¶] (1)(A) The date upon which the new construction is *available for use by the owner*, unless the owner does not intend to occupy or use the property. The owner shall notify the assessor prior to, or within 30 days of, the date of commencement of construction that he or she does not intend to occupy or use the property. If the owner does not notify the assessor as provided in this subdivision, the date shall be conclusively presumed to be the date of completion. [¶] . . . [¶] (2) If the owner does not intend to occupy or use the property, the date the property is occupied or used with the owner's consent. [¶] (3) If the property cannot be functionally used or occupied on the date it is available for use considering the type of property and any special facts and circumstances affecting use or occupancy, the date the property can be functionally used or occupied. [¶] . . . [¶] (c) *The board, after consultation with the California Assessors Association, shall adopt rules and regulations defining the date of completion of new construction in accordance with this section.* The rules and regulations shall not define the date of completion in a manner that the date of completion of all new construction is postponed until the following lien date. [¶] (d) Nothing in this section shall preclude the reassessment of that property on the assessment roll for January 1 following the date of completion." (Rev. & Tax. Code, § 75.12, italics added.)

Our first task is to construe the meaning of this statute's language defining the date of completion. Revenue and Taxation Code section 75.12 defines the

date of completion as the earliest of three dates, which are specified in subdivision (a)(1), (2) and (3). Subdivision (a)(2) is inapplicable here, because there was no evidence at the 1998 AAB hearing, and no one contends, that Georgiev did not intend to occupy or use the property. Thus, the date of completion for Georgiev's addition was the *earliest* of the dates specified in subdivision (a)(1) and (3): the date that the addition was "available for use" by Georgiev (subd. (a)(1)), or "[i]f the property cannot be functionally used or occupied on the date it is available for use . . . , the date the property can be functionally used or occupied" (subd. (a)(3)).

By mandating that the date of completion is the *earliest* of either the date the property is "available for use" or the date it "can be functionally used or occupied," but limiting the latter option to only those situations where the property could not be functionally used or occupied "on the date it is available for use," the statute appears to turn subdivision (a)(3) into surplusage. If property *cannot* be "functionally used or occupied on the date it is *available for use*," then the date when the property *can be* "functionally used or occupied" must be *later*, as opposed to *earlier*, than the date on which the property "is available for use." Since the date of completion is the date the property is "available for use," so long as that is the *earliest* date, subdivision (a)(3) will never set the date of completion.

We need not venture further into this thicket. No evidence was adduced at the 1998 AAB hearing that there was a date upon which the addition *was* "available for use," but could *not* be "functionally used."[9] The assessor and Georgiev both proceeded as if there were no difference between availability for use and availability for functional use.

Although we have no transcript of the 1998 AAB hearing on Georgiev's 1997 petition, the parties do not contend that the AAB's 1999 statement of findings inaccurately recounts the evidence or arguments presented by the assessor and Georgiev at the 1998 hearing. We find the 1999 statement of findings adequate to enable review of the sufficiency of the evidence presented at the 1998 AAB hearing.

Georgiev claims that his presentation of evidence of the building inspector's "final o.k." of the addition compelled the AAB to find that the addition was "available for use" in July 1995. He relies on two San Jose Municipal

---

[9] Nevertheless, we urge the Legislature to amend Revenue and Taxation Code section 75.12, subdivision (a) to clarify its intent. (See Regs., § 463.500.)

Code ordinances concerning building inspections.[10] "There shall be a final inspection and approval of all buildings and structures when completed and ready for occupancy and use." (San Jose Mun. Code, § 24.02.515, subd. (E).) "**Final Inspection**. To be made after finish grading and the building is completed and ready for occupancy or use." (San Jose Mun. Code, § 24.02.520, subd. (F).) Georgiev argues that these ordinances conclusively establish that his addition was "available for use" on the date that the addition received a "final o.k." by the building inspector.

■ While these two ordinances, coupled with evidence that Georgiev's addition was given a "final o.k." by the building inspector in July 1995, provide strong evidence that his addition was "available for use" in July 1995, we must reject his argument that this evidence *conclusively established* that his addition was "available for use" in July 1995. The date of completion of new construction for property tax assessment purposes is defined in Revenue and Taxation Code section 75.12. The Legislature explicitly mandated that the State Board of Equalization was the sole entity authorized to "adopt rules and regulations defining the date of completion of new construction in accordance with this section." (Rev. & Tax. Code, § 75.12, subd. (c).) The Legislature did not authorize or permit individual municipalities to create their own ordinances defining the date of completion for property tax assessment purposes. Consequently, San Jose ordinances cannot *conclusively establish* the date of completion for property tax assessment purposes.

We turn now to the regulations enacted by the State Board of Equalization. "For purposes of this regulation, the date of completion is the date the property or portion thereof is available for use. In determining whether the real property or a portion thereof is available for use, *consideration shall be given to the date of the final inspection by the appropriate governmental official*, or, in the absence of such inspection, the date the prime contractor fulfilled all of his contract obligations, or in the case of fixtures, the date of the completion of testing of machinery and equipment." (Regs., § 463, subd. (e), italics added.) " 'Available for use' means that the property, or a portion thereof, has been inspected *and approved for occupancy* by the appropriate governmental official or, in the absence of such inspection and approval procedures, when the prime contractor has fulfilled all of the contractual obligations. When inspection and approval procedures are non-existent or exist but are not utilized and a prime contractor is not involved,

---

[10] A third San Jose Municipal Code ordinance referenced by Georgiev concerns the issuance of a certificate of occupancy. (San Jose Mun. Code, § 24.02.630.) As the record contains no evidence that a certificate of occupancy ever issued for Georgiev's addition, this ordinance is irrelevant to Georgiev's contentions.

the newly constructed property is available for use *when outward appearances clearly indicate it is immediately usable for the purpose intended.*" (Regs., § 463.500, subd. (c)(4), italics added.) "New construction is not available for use if, on the date it is otherwise available for use, it cannot be functionally used or occupied. In that case, the property is not available for use until the date that any legal or physical impediment to functional use or occupancy is removed." (Regs., § 463.500, subd. (c)(4).)

■ These regulations make it clear that, while the fact finder must give "consideration . . . to the date of the final inspection," that date is not necessarily the date of completion for property tax assessment purposes. If the new construction cannot be "functionally used or occupied" on the date that it is "otherwise available for use," the date of its availability for use does not establish the date of completion, and the property is not considered completed until it is functionally usable. Alternatively, the date of completion may depend on when "outward appearances clearly indicate" that the new construction is "immediately usable for the purpose intended." (Regs., § 463.500, subd. (c)(4).)

■ Application of these regulations here supports the AAB's 1999 decision. Although evidence of the July 1995 "final o.k." was admitted at the hearing, Georgiev testified that the addition was not "completed" and lacked "functionality" due to significant "problems with the bathrooms, floors and stairs" that "would cost approximately $20,000.00 to $30,000.00 to cure." This evidence supports the AAB's determination that the addition was not "available for use" in July 1995 due to its lack of functionality and the need for significant repairs to its major components. Accordingly, the AAB did not abuse its discretion in rejecting Georgiev's claim that the addition was 100 percent complete in July 1995 for property tax assessment purposes.[11]

### III. Disposition

The judgment is affirmed.

Duffy, J., concurred.

---

[11] Because the AAB did not abuse its discretion, we need not consider the validity of the superior court's alternative judicial estoppel determination. The remainder of Georgiev's contentions fail due to the invalidity of his underlying contention, and we need not separately address them.

**McADAMS, J., Concurring.**—I concur in the judgment. I write separately because I do not join in the admittedly unnecessary analysis attempting to construe the meaning of the language of Revenue and Taxation Code section 75.12 defining the date of completion. I join the opinion in all other respects.

A petition for a rehearing was denied July 11, 2007.