Filed 9/27/17

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| LUZ SOLAR PARTNERS LTD., III et. al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>SAN BERNARDINO COUNTY et al.,<br><br>    Defendants and Respondents. | E064882<br><br>(Super.Ct.No. CIVDS1413098)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County. David Cohn, Judge. Affirmed.

Drinker Biddle & Reath, George T. Caplan, Kristopher S. Davis, and Paul M. Gelb for Plaintiffs and Appellants.

Jean-Rene Basle, County Counsel, and Richard D. Luczak, Deputy County Counsel, for Defendant and Respondent San Bernardino County.

Jean-Rene Basle, County Counsel, and Eric Yee, Deputy County Counsel, for Defendant and Respondent Assessment Appeals Board of San Bernardino – Board No. 2.

1

Plaintiffs and appellants Luz Solar Partners Ltd., III; Luz Solar Partners Ltd., IV; Luz Solar Partners Ltd., V; Luz Solar Partners Ltd., VI; Luz Solar Partners Ltd., VII; Luz Solar Partners Ltd., VIII and Harper Lake Company VIII; and Luz Solar Partners Ltd., IX and HLC IX (collectively "Luz Partners") challenge the assessment of real property improved with solar energy generating systems (SEGS units) for tax years 2011-2012 and 2012-2013. They contend that defendants and respondents San Bernardino County (County) and the Assessment Appeals Board of San Bernardino County (Appeals Board) erroneously relied on the State of California Board of Equalization's (Board) incorrect interpretation of the applicable statutes governing the method of assessing the value of the property. Rejecting their contention, we affirm.

## I. PROCEDURAL BACKGROUND AND FACTS

In 1980, the Legislature was given "the authority to exclude the construction of certain active solar energy systems from property tax assessment." (Cal. Const., art. XIIIA, § 2.) As a result, it enacted Revenue and Taxation Code[1] section 73, which excludes newly constructed energy systems from the definition of "new construction" such that they are not considered, for property tax purposes, to be improvements that add value.[2] In 2011, "the Legislature added intent language declaring that section 73 was

---

[1] Further unspecified statutory references are to the Revenue and Taxation Code.

[2] "The assessor shall administer this subdivision in the following manner: [¶] (A) The initial purchaser of the building shall file a claim with the assessor and provide to the assessor any documents necessary to identify the value attributable to the active solar energy system included in the purchase price of the new building. . . . [¶] (B) The assessor shall evaluate the claim and determine the portion of the purchase price that is

*[footnote continued on next page]*

enacted to encourage the building of active solar energy systems" by providing tax benefits for new construction. (§ 73 [Stats. 2011-2012, 1st Ex. Sess., ch. 3, § 2 (Assem. Bill XI 15), effective June 28, 2011].)

Between 1986 and 1991, Luz Partners built seven utility SEGS units. SEGS units generate electricity largely through solar energy; however, conventional boilers and furnaces fueled by natural gas are used as a backup source of power generation. The solar component is comprised of mirrors, conduits, generators, and transformers, and accounts for approximately 97 percent of the cost of installation of a SEGS unit. The nonsolar component is comprised of the natural gas boilers and furnaces, and accounts for approximately 3 percent of the cost of installation of the SEGS unit.

Until 2010, the County was the only California county to have real property improved with SEGS units (solar property). As such, the County had to develop its own procedure for assessing the solar property in compliance with section 73. The San Bernardino County Assessor (Assessor) did this by valuing the solar property with the nonsolar component of the SEGS unit based on the then-current market values for boilers and furnaces, and placing those values on the assessment rolls under the fixtures category. Under this method, the Assessor found that from year to year, these assessed

---

attributable to the active solar energy system. The assessor shall then reduce the new base year value established as a result of the change in ownership of the new building by an amount equal to the difference between the following two amounts: [¶] (i) That portion of the value of the new building attributable to the active solar energy system." (Former § 73, subd. (e)(1) [Stats. 2008, ch. 538, § 1 (Assem. Bill 1451), effective Sept. 28, 2008].)

values generally declined as the boilers and furnaces depreciated. There is no dispute that the nonsolar component parts have lost most of their original value.

As more solar facilities were constructed throughout the state, assessors sought guidance on handling solar property appraisals from the Board. The Board provides guidance to county assessors in connection with the classification, assessment and taxation of property and does so, in part, by way of letters to assessors. (*Maples v. Kern County Assessment Appeals Bd.* (2002) 96 Cal.App.4th 1007, 1015.) It further is charged with promulgating rules and regulations to ensure statewide uniformity in appraisal practices. (Gov. Code, § 15606, subd. (c).)

On June 16, 2009, the Board issued a letter to assessors titled "Decline In Value: Excluded New Construction" with instructions to include the solar component of the SEGS unit in an estimate of full cash value of the solar property.[3] According to the Board's letter, pursuant to section 51,[4] the full cash value of the solar property (including

---

[3] Later, on December 6, 2012, the Board issued "Guidelines for Active Solar Energy Systems New Construction Exclusion" to clarify the assessment methodology for solar properties.

[4] Section 51, subdivision (a), in relevant part, provides: "For purposes of subdivision (b) of Section 2 of Article XIIIA of the California Constitution, for each lien date after the lien date in which the base year value is determined pursuant to section 110.1, the taxable value of real property shall, except as otherwise provided in subdivision (b) or (c), be the lesser of: [¶] (1) Its base year value, compounded annually since the base year by an inflation factor . . . . [¶] . . . [¶] (2) Its full cash value, as defined in Section 110, as of the lien date, taking into account reductions in value due to damage, destruction, depreciation, obsolescence, removal of property, or other factors causing a decline in value." Section 51, subdivision (d), further defines real property as "that appraisal unit that persons in the marketplace commonly buy and sell as a unit, or that is normally valued separately."

*[footnote continued on next page]*

items exempted under section 73) is considered for fair market comparison purposes to the factored base year value. Under section 51, subdivision (a), real property is assessed on the basis of the lesser of two possible taxable values. One alternative is the base year value (i.e., the value of the property at the time of acquisition), as adjusted for inflation since the base year, not to exceed 2 percent each year, to produce the "factored" base year value. (§ 51, subd. (a)(1).) The other alternative is the full cash, or market, value.[5] (§ 51, subd. (a)(2).) The Board instructed assessors to "annually enroll the lower of a property's factored base year value or its full cash value as of the lien date, as defined in section 110." Section 110, in relevant part, provides that full cash value is "the amount of cash or its equivalent that property would bring *if exposed for sale* in the open market under conditions in which neither buyer nor seller could take advantage of the exigencies of the other. . . ." (§ 110, subd. (a), italics added.) The Board specified that the section 73 "exclusions do not extend through subsequent reassessment prompted by a change in ownership of the real property. When a property with excluded new construction sells, the excluded new construction becomes assessable along with everything else on the property. Since an estimate of full cash value for decline-in-value purposes is made as if the property was exposed for sale, the full cash value should not be reduced by the value

---

[5] "In a rising real estate market, the factored base year value will generally be the lower of the two alternatives. But the full cash value of a parcel may drop below the factored base year value 'due to damage, destruction, depreciation, obsolescence, removal of property or other factors' [citation], such as a general decline in market demand. In that event, the assessor must base the assessment on that lower value." (*El Dorado Palm Springs, Ltd. v. Board of Supervisors* (2002) 104 Cal.App.4th 1262, 1271-1272 (conc. & dis. opn. of McKinster, J.).)

of any excluded new construction." In short, for the purpose of conducting a section 51 comparison to determine whether there has been appreciation or depreciation, the Board's guidelines directed that the factored base year value should include only the nonsolar component, but the current full cash value should include both the solar and the nonsolar component. The lower of the two values thus serves as the basis for calculating the amount of property tax owed.

When the Assessor applied the Board's assessment methodology to the 2011 and 2012 tax years, the result was an increase of approximately 150 percent in Luz Partners's taxes. Given the significant increase, Luz Partners applied for a changed assessment of seven solar properties. On May 7, 2014, following a hearing and briefing, the Appeals Board released its decision denying the application.

Luz Partners filed the underlying Superior Court action on September 5, 2014, seeking a refund of the alleged excess property taxes paid for the 2011 and 2012 tax years. They also challenged the constitutionality of the methodology used by the Assessor. On August 31, 2015, the trial court ruled against Luz Partners, and on October 5, 2015, it entered judgment in favor of the County and the Appeals Board.

## II. DISCUSSION

This case concerns the validity of the assessment methodology that the Assessor uses to calculate the annual tax on solar properties (i.e., properties improved with the construction of SEGS units). The Assessor compared the solar property's factored base year value (including only the nonsolar fixtures, or 3 percent) with its current full cash

6

value (including both solar and nonsolar fixtures, or 100 percent), and used the lower of the two for assessing the property tax owed.

## A. Standard of Review.

"Where the taxpayer claims a valid valuation method was improperly applied, the trial court is limited to reviewing the administrative record. [Citation.] The court may overturn the assessment appeals board's decision only if there is no substantial evidence in the administrative record to support it. [Citation.] However, where the taxpayer challenges the validity of the valuation method itself, the court is faced with a question of law. In such a case, the court does not evaluate whether substantial evidence supports the board's decision, but rather must inquire into whether the challenged valuation method is arbitrary, in excess of discretion, or in violation of the standards prescribed by law. [Citation.]" (*Maples v. Kern County Assessment Appeals Bd.*, *supra*, 96 Cal.App.4th at p. 1013; see *Georgiev v. County of Santa Clara* (2007) 151 Cal.App.4th 1428, 1437.)

The interpretation and application of a statute is a question of law which is reviewed de novo on appeal. (*Reilly v. City and County of San Francisco* (2006) 142 Cal.App.4th 480, 487.) However, the Board's interpretation of the statutes it is charged with implementing is generally entitled to significant deference. (*Benson v. Marin County Assessment Appeals Bd.* (2013) 219 Cal.App.4th 1445, 1455-1457; see, e.g., *Coca-Cola Co. v. State Board of Equalization* (1945) 25 Cal.2d 918, 921 [administrative construction entitled to great weight]; see also *Sea World, Inc. v. County of San Diego* (1994) 27 Cal.App.4th 1390, 1405 [weight may be accorded to letters to assessors].)

The validity of the assessment methodology used by the Assessor in appraising the solar properties is a question of law subject to de novo review.

**B. Analysis.**

Luz Partners challenges the assessment methodology advanced by the Board, contending that it (1) violates sections 51 and 73 because it does not use the same "appraisal unit" when comparing the factored base year value to the current full cash value, and (2) treats the nonsolar component as if it were appreciating. These same claims are used to support Luz Partners's criticism of the trial court's order. As we explain below, we reject them.

*1. The Appraisal Unit.*

In order to determine whether the assessment methodology violates sections 51 and 73, we must begin with a determination of what constitutes the appraisal unit. The properties in this case are unique because they are improved with SEGS units that consist of active solar electric generating systems (solar component) and natural gas boilers and furnaces (nonsolar component) to make electricity. The nonsolar component (3 percent) of the SEGS unit is subject to taxation; however, under section 73, the solar component (97 percent), absent a change in ownership, is exempt from property taxation. The two systems can operate independently, but their values are dependent upon each other; neither component is bought or sold separately in the open market.

Luz Partners maintains that the proper appraisal unit consists solely of the nonsolar component not exempted from taxation under section 73. However, section 73 does not dictate what constitutes an appraisal unit when valuing SEGS units. Instead, the

8

definition of appraisal unit is found in section 51, which provides that an appraisal unit is that which "*persons in the marketplace commonly buy and sell as a unit, or that is normally valued separately*." (§ 51, subd. (d), italics added; see *Western States Petroleum Assn. v. Board of Equalization* (2013) 57 Cal.4th 401, 417-418.) In this case, persons in the marketplace would purchase the real property improved by the SEGS unit (including both solar and nonsolar components) because there is no separate market for the nonsolar component (boilers and furnaces). (*Exxon Mobil Corp. v. County of Santa Barbara* (2001) 92 Cal.App.4th 1347, 1353 [in determining whether a property is part of a larger appraisal unit, the assessor or board should consider, among other factors, which unit is most likely to be sold, if the property were exposed to the open market].) Thus, the appraisal unit includes the real property improved with the integrated SEGS unit.

We reject the claim of Luz Partners that respondents changed the appraisal unit.[6] They contend that the respondents "ignore [Property] Tax Rule 461(e)[7] which states that 'the same' appraisal unit that is used for the base year value must be used for the current lien date value when conducting Section 51's decline in value analysis." They further contend that the appraisal unit is limited to the boilers and furnaces (3 percent of the

---

[6] On September 30, 2016, Luz Partners requested judicial notice of an excerpt from Section 504 of the Assessor's Handbook and the May 29, 2003, letter to assessors entitled "HIERARCHY OF PROPERTY TAX AUTHORITIES." On October 17, 2016, the County responded that it does not oppose the request. The request is granted. (Evid. Code, § 452, subd. (c); *Board of Supervisors v. Lonergan* (1980) 27 Cal.3d 855, 866, fn. 11.

[7] Cal. Code Regs., tit. 18, § 461, subd. (e).

9

original value of the SEGS unit) because that was the only taxable equipment considered in determining the factored base value.

As previously noted, the appraisal unit is what people "in the marketplace commonly buy and sell." (§ 51, subd. (d).) The properties at issue here are real properties improved with SEGS units that are used as integrated units, including both solar and nonsolar components. If and when Luz Partners decides to sell, it will sell the real properties improved with the SEGS units (including both solar and nonsolar components). The very fact that the parties were able to allocate 97 percent of the cost of the SEGS unit to the solar component, and 3 percent of the cost of the SEGS unit to the nonsolar component, means that it takes both components to make 100 percent of the SEGS unit. In assessing the solar property's base year value for taxation purposes, section 73 allows for the exclusion of the solar component, or 97 percent of each SEGS unit. As long as ownership of the solar property remains the same or there is no new construction, Luz Partners will continue to realize the benefits of the base year value. However, the appropriate appraisal unit remains the solar property, including the complete SEGS unit, because that is the only unit that captures the full cash value for comparison purposes under section 51, even though 97 percent remains exempt from taxation under section 73.

Notwithstanding the above, Luz Partners argues that Property Tax Rules, rule 324, together with section 73's mandate that the only taxable portion of the SEGS unit is the nonsolar component, require the conclusion that the proper appraisal unit is the property with the nonsolar component only. Not so.

10

Under the authority of Government Code section 15606, subdivision (c), the State Board of Equalization promulgated Property Tax Rules, rule 324. Said rule authorized the board "to determine the full value of property or other issues, while limited by the laws of this state and the laws of the United States . . . ." (Cal. Code Regs., tit. 18, § 324, subd. (b).) It further defined an appraisal unit of property as "a collection of assets that functions together, and that persons in the marketplace commonly buy and sell as a single unit or that is normally valued in the marketplace separately from other property, *or that is specifically designated as such by law.*" (Cal. Code Regs., tit. 18, § 324, subd. (b), italics added.) It is the italicized language that Luz Partners relies upon to support its argument.

As previously noted, section 73 exempts the solar component of the SEGS units from taxation. However, section 51, subdivision (d), defines an appraisal unit as that which "persons in the marketplace commonly buy and sell as a unit, or that is normally valued separately." (§ 51, subd. (d).) Property Tax Rules, rule 324(b) prescribes consideration of both sections 51 and 73 in determining what constitutes an appraisal unit. Our analysis above does just that, and reconciles any alleged inconsistency in the statutes in favor of section 51, which specifically defines an appraisal unit.

### 2. *The Assessment Methodology.*

Prior to 2010, the Assessor considered the nonsolar component of the SEGS unit (3 percent) in establishing the base year value of the solar property. Furthermore, every year thereafter, the Assessor continued to look only at the nonsolar component of the SEGS unit (which depreciated every year) for calculating the real property's value for tax

11

purposes. However, as more SEGS units were constructed, assessors sought guidance on how to value solar properties. In response, the Board analyzed and interpreted article XIII of the California Constitution, Property Tax Rules, rules 324 and 461 (Cal. Code Regs., tit. 18, §§ 324, 461) and sections 51 and 73, and issued its June 16, 2009, letter that provided the backbone of the authority, and the December 6, 2012, guidelines, which provided extensive details of assessing solar property.

According to the Board's guidelines, once a base year value of the solar property is established, section 73's job is complete, and the focus shifts to section 51 which, in accordance with Proposition 13 (limiting any increase of the value of real property except when there is a change of ownership or new construction) and Proposition 8 (providing for a reduction in real property assessments when there is a decline in market value), addresses any appreciation/depreciation in the solar property's value. Pursuant to section 51, the Assessor is to base the tax assessment on the lesser of the solar property's factored base year value (i.e., nonsolar equipment only pursuant to section 73) or the solar property's current full cash value (i.e., both nonsolar and solar equipment). Here, the lesser was the solar property's factored base year value. The value of the excluded solar equipment was never enrolled; it was only considered for comparing the factored base year value to the current full cash value. There was no violation of section 73 or any internal contradiction.

In challenging the new assessment methodology, Luz Partners asserts that it treats depreciating assets as if they were appreciating. It claims that by comparing the factored base year value (3 percent of the SEGS unit) against the current cash value (100 percent

12

of the SEGS unit), the Assessor "always ends up treating the only taxable portion of these SEGS as if it were appreciating, and thereby increasing the value entered on the roll and increasing the taxes each year, even though the Non-Solar component, which is wholly comprised of equipment and machinery, incontrovertibly is depreciating." Once again, the claim of Luz Partners is premised on its view that the SEGS units should be separated into solar and nonsolar components, rather than looking at them as integrated units. However, as previously noted, the appraisal unit is the real property improved with the SEGS unit. A buyer in the marketplace will not purchase the real property improved with the nonsolar component of the SEGS unit only. Rather, a buyer purchases the real property improved with the entire SEGS unit. Prior to 2011, the assessment methodology used by the Assessor was not in compliance with the applicable law: the Assessor treated the taxable portion of the SEGS unit (the boilers and furnaces) as a depreciating asset and reduced its value as one would an ordinary piece of personal property. However, after receiving instructions from the Board, the Assessor began assessing the factored base year value of the solar property based on section 51's 2 percent maximum index rather than as a depreciating asset, enrolling the lesser factored base year value rather than the higher current full cash value.

For the above reasons, we conclude that the Board correctly interpreted the applicable law in setting forth the method of assessing the value of the solar properties.

## III.  DISPOSITION

The judgment is affirmed.   Respondents to recover their costs on appeal.

CERTIFIED FOR PUBLICATION


RAMIREZ
P. J.

We concur:

MCKINSTER
J.

CODRINGTON
J.

14