Filed 2/27/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| HGST, INC., <br><br>    Plaintiff and Appellant, <br><br>v. <br><br>COUNTY OF SANTA CLARA, <br><br>    Defendant and Respondent. | H044904 <br>(Santa Clara County <br>Super. Ct. No. 1-14-CV-263300) |

Appellant HGST, Inc. (HGST) filed an action against the County of Santa Clara (the County) seeking a refund for business property taxes paid on machinery, equipment, fixtures, and other personal property located in San Jose. Among other things, HGST claimed the Santa Clara County Assessment Appeals Board (the AAB) erroneously overassessed the value of the property. After a four-day trial, the trial court issued a statement of decision and entered judgment in favor of the County.

HGST raises four contentions on appeal. First, HGST contends the trial court erred by reviewing the entire case in blanket fashion under a substantial evidence standard rather than examining each individual claim to determine which standard of review should apply to that issue. Second, HGST contends the trial court erroneously failed to review certain legal challenges to the valuation methodology applied by the AAB. Third, HGST contends the trial court erred by upholding the AAB's decision not to apply the "purchase price presumption" set forth in Revenue and Taxation Code

section 110.[1]  Fourth, HGST contends the trial court erred by upholding the imposition of interest on the escape assessments under section 531.4.

For the reasons below, we conclude the first three of HGST's claims are without merit, but we hold the trial court erred by upholding the imposition of interest under section 531.4.  We will reverse in part and remand for further proceedings on the cause of action challenging the imposition of interest.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

HGST bought the property at issue from IBM for $2.4 billion in 2002.  The property primarily consists of fixtures, machinery, and equipment for the manufacturing of hard disk drives.  The Santa Clara County Assessor annually imposed escape assessments on the property from 2003 through 2008.[2]

HGST challenged the assessor's findings through multiple applications to the AAB.  After hearings on the matter, the AAB issued findings and conclusions in 2012 largely adopting the assessor's findings of fact.  In 2013, HGST filed a claim for a refund of $15 million with the Santa Clara County Board of Supervisors, which denied the claim.

In 2014, HGST filed an action against the County in the superior court seeking a refund for the taxes paid.  The first amended complaint sets forth 17 causes of action alleging various errors in the AAB's methods and factual findings.  The trial court held four days of hearings in 2015.  In 2016, the court filed a statement of decision ruling against HGST and entering judgment in favor of the County on all counts.

HGST timely appealed.

---

[1] Subsequent undesignated statutory references are to the Revenue and Taxation Code.

[2] This appeal covers assessments issued for tax years 2003/2004, 2004/2005, 2005/2006, 2006/2007, and 2007/2008.

## II. DISCUSSION

### A. The Trial Court's Standard of Review

HGST contends the trial court erred by applying the substantial evidence standard of review to the AAB's entire decision in a "blanket" or "wholesale" fashion. HGST argues that the trial court should have reviewed certain claims de novo because those claims presented questions of law, not fact—e.g., issues of statutory interpretation and challenges to the AAB's methodology. The County argues the trial court properly applied the substantial evidence standard of review to each claim on an individual basis.

#### 1. Standards of Review Applied by Trial Courts

A trial court reviewing an appeals board's rulings on tax assessments applies different standards of review, analogous to those applied by a court of appeal when reviewing a trial court's rulings. And like a court of appeal, the trial court applies a substantial evidence standard of review to findings of fact. (*Prudential Ins. Co. v. City and County of San Francisco* (1987) 191 Cal.App.3d 1142, 1148.) "The taxpayer has no right to a trial de novo in the superior court to resolve conflicting issues of fact as to the taxable value of his property." (*Norby Lumber Co. v. County of Madera* (1988) 202 Cal.App.3d 1352, 1362.)

By contrast, "when a board of equalization purports to decide a question of law, the decision is reviewed de novo." (*Maples v. Kern County Assessment Appeals Bd.* (2002) 96 Cal.App.4th 1007, 1013 (*Maples*).) "[I]nterpretation of statutes and administrative regulations are quintessential issues of law." (*Mission Housing Development Co. v. City and County of San Francisco* (1997) 59 Cal.App.4th 55, 73.) Furthermore, "where the taxpayer attacks the validity of the valuation method itself, the issue becomes a question of law subject to de novo review." (*Elk Hills Power, LLC v. Board of Equalization* (2013) 57 Cal.4th 593, 606.) The question for the trial court is then "whether the challenged method of valuation is arbitrary, in excess of discretion, or

3

in violation of the standards prescribed by law." (*Bret Harte Inn, Inc. v. City and County of San Francisco* (1976) 16 Cal.3d 14, 23 (*Bret Harte Inn*).)

A taxpayer may also claim that although the appeals board chose a valid method of valuation, the board *misapplied* the chosen method. In that case, the trial court applies a substantial evidence standard based on a review of the administrative record, without taking new evidence. "Where the taxpayer claims a valid valuation method was improperly applied, the trial court is limited to reviewing the administrative record. [Citation.] The court may overturn the assessment appeals board's decision only if there is no substantial evidence in the administrative record to support it." (*Maples*, *supra*, 96 Cal.App.4th at p. 1013.) However, "[w]hether a taxpayer is challenging 'method' or 'application' is not always easy to ascertain." (*Ibid.*)

### 2. *The Trial Court Properly Applied the Substantial Evidence Standard of Review to Individual Claims Where Required*

HGST contends the trial court improperly applied the substantial evidence standard of review to the entire matter in "blanket" fashion. HGST concedes that certain claims it raised were factual, properly requiring review under the substantial evidence standard. But HGST contends the trial court should have determined the proper standard of review on an issue-by-issue basis. For example, as set forth in Section II.B. below, HGST claims it also contested the valuation methodology itself, requiring de novo review by the trial court.

As the County points out, the trial court determined and applied the standard of review on an issue-by-issue basis. In its statement of decision, the court addressed each of the 17 causes of action in turn and applied the standard of review to each claim independently. For example, in ruling on the first cause of action—a strictly procedural

4

claim about the timeliness of the assessor's raise letters[3]—the relevant dates were not in dispute; the court simply looked to the applicable regulations to determine that the assessor acted in a timely fashion. The court did not review this claim under a substantial evidence standard. By contrast, in considering other causes of action on a claim-by-claim basis, the court expressly applied a substantial evidence standard of review to each claim independently, e.g.: "SINCE THE THIRD CAUSE OF ACTION CHALLENGES FINDINGS OF FACT AND SUBSTANTIAL EVIDENCE SUPPORTS THE AAB'S DECISION, THE COUNTY IS ENTITLED TO JUDGMENT."

HGST focuses on an introductory section in the trial court's statement of decision in which the court stated, "Having now reviewed the Administrative Record, heard the testimony of the parties, and considered the arguments of counsel, the Court now concludes that *the substantial evidence standard applies to this case*, and no evidence outside of the Administrative Record is admissible for consideration by this Court." (Italics added.) HGST contends the italicized portion of that sentence shows the court applied the substantial evidence standard of review in "wholesale" fashion to the entire case.

HGST ignores the context of this statement, wherein the trial court was ruling on the scope of the evidence under its review. When a taxpayer claims an appeals board improperly applied a valid valuation method, the trial court is limited to reviewing the administrative record for substantial evidence. (*Maples*, *supra*, 96 Cal.App.4th at p. 1013.) Here, HGST had argued prior to the hearing that it was "entitled to submit 'new evidence at trial' " because HGST's claims went beyond a challenge to the application of the valuation method. The County argued otherwise and moved to exclude the introduction of any new evidence. At the start of the hearing, the trial court ruled that it

---

[3] The assessor issued multiple "raise letters" increasing the assessed value of the property. In this appeal, HGST does not challenge the trial court's ruling on this cause of action.

was unable to determine whether HGST was entitled to submit new evidence based on the nature of its claims. Accordingly, the court tentatively ruled that HGST could introduce testimony at the hearing, and the court reserved ruling on whether new evidence could be considered in making a final determination. After the hearing, the court found in its statement of decision that, having considered the proffered new evidence, the court's review was limited to the administrative record under a substantial evidence standard. In other words, the court's statement was an evidentiary ruling, not a blanket application of the same standard of review to the entire case. As a practical matter, because the trial court applied the substantial evidence standard to most of HGST's claims, it was not inaccurate for the trial court to characterize its role as applying that standard to "this case." Nonetheless, as explained above, the court did analyze each claim on an issue-by-issue basis and it applied the standard of review to each claim independently of the others.

Accordingly, we conclude this claim is without merit. As to whether the court incorrectly determined or improperly applied the standard of review for any specific claims, we consider those arguments below.

### B. The Trial Court's Review of the AAB's Valuation Methodology

In its complaint, HGST alleged multiple causes of action, among others, challenging the AAB's valuation of the machinery and equipment located in San Jose. In several causes of action, HGST claimed the AAB used the wrong discount rate and the wrong income adjustment factor in its calculations. The trial court determined that these claims constituted challenges to the AAB's findings of fact, and the court upheld the AAB's findings under a substantial evidence standard of review. HGST contends these claims constituted challenges to the validity of the AAB's valuation methodology and that the trial court erred by reviewing the AAB's findings for substantial evidence rather than reviewing them de novo as questions of law. The County contends these claims

6

constitute challenges to the AAB's factual findings, and that the trial court properly upheld those findings as supported by substantial evidence.

### 1. Background

The parties agree that the AAB properly applied the "Cost Approach" method of valuation. (See Cal. Code Regs., tit. 18, § 6.) They disagree, however, on the details of that approach. The Cost Approach method relies on a formula for estimating the value of the machinery and equipment at issue. The valuation formula under the Cost Approach incorporates two factors, among others: the rate of return on the property, and the income adjustment factor.[4] The AAB applied an 11 percent rate of return, but HGST asserted the rate should have been between 6.25 percent and 7.5 percent. Similarly, the AAB applied an income adjustment factor of 12 percent, but HGST asserted it should have been 22 percent.

In its findings and conclusions, the AAB summarized the evidence adduced on these factors as follows. First, the AAB noted that the parties agreed that the Cost Approach provided the proper methodology, and that "considerable testimony was presented" regarding the specifics of the methodology. As to the rate of return, HGST's expert relied on the "mass appraisal recommendations" provided by the State Board of Equalization (SBE) to arrive at rates ranging between 6.25 percent and 7.5 percent, depending on the particular lien date. By contrast, the assessor presented "weighted average cost of capital" calculations for IBM and other large hard disk drive manufacturers in the same industry as HGST. Because IBM had recently owned the equipment in question, the assessor relied on its estimate of 11 percent for IBM. After reviewing the evidence, the AAB adopted the 11 percent rate of return.

---

[4] The briefs and the record sometimes refer to the "discount rate" when referencing the rate of return. Similarly, the income adjustment factor is sometimes referred to as the "income decline factor" or "annual decline factor." Any differences in the terminology or meanings of these terms are immaterial to this appeal.

As to the income adjustment factor, the AAB summarized the testimony from HGST's expert, who provided a scatter gram to support a 22 percent adjustment factor based on the declining prices of disk drives. The AAB noted that this estimate was based on the product produced by the equipment in question, not the equipment itself. The assessor's expert further noted that HGST's expert had failed to consider sales volume. The assessor's expert opined that this failure resulted in an inaccurate estimate because when a highly technical product is new to the market, the price is high but the sales volume is very low. The assessor presented alternative estimates based on several previous hearings in which computer industry representatives had agreed to a 12 percent income adjustment factor. The assessor also relied on producer price index data on hard disk drive manufacturers as published by the Bureau of Labor Statistics. The AAB adopted the assessor's estimate of 12 percent for the income decline factor.

The trial court reviewed the record on these issues under a substantial evidence standard of review and found the AAB's findings to be supported by substantial evidence.

### 2. *The Trial Court Properly Ruled That the AAB's Findings Are Supported by Substantial Evidence*

HGST contends that its challenges to the AAB's use of an 11 percent rate of return and a 12 percent income adjustment factor constitute challenges to the valuation methodology itself, not the AAB's findings of fact. HGST relies on the SBE Assessors' Handbook as persuasive authority under the holdings set forth in *Sky River LLC v. County of Kern* (2013) 214 Cal.App.4th 720 (*Sky River*). HGST argues that the trial court therefore erred by reviewing these claims under a substantial evidence standard rather than reviewing them de novo as questions of law.

But HGST's own pleadings are inconsistent on this point. The complaint alleges in the fourth cause of action that the AAB utilized an improper valuation methodology, but it also alleges the rate of return and income adjustment factor are *findings based on*

8

*an invalid application* of that method. The thirteenth cause of action alleges the AAB's use of the 11 percent rate of return and 12 percent income adjustment factor constituted "erroneous factual findings" that were "not based on substantial evidence." As noted above, an appeals board's factual findings and alleged *misapplication* of a valuation method are subject to review for substantial evidence. (*Dreyer's Grand Ice Cream, Inc. v. County of Kern* (2013) 218 Cal.App.4th 828, 835 (*Dreyer's*); *Maples*, *supra*, 96 Cal.App.4th at p. 1013.)

Notwithstanding the language in the complaint, the trial court properly reviewed the AAB's decision to use the 11 percent rate of return and 12 percent income adjustment factor for substantial evidence. In doing so, the trial court relied on *Dreyer's*, *supra*, 218 Cal.App.4th 828. In *Dreyer's*, as in this case, the taxpayer challenged the trial court's use of the substantial evidence standard of review. The parties agreed on the overall "cost approach" valuation method but disagreed about the use of an adjustment factor for underutilization. (*Id.* at pp. 837-838.) The taxpayer argued on appeal that the issue presented a question of law, such that the trial court should have considered it de novo. The Court of Appeal acknowledged that " '[w]hether a taxpayer is challenging "method" or "application" is not always easy to ascertain,' " but the court ultimately held it to be an issue of fact, not law. "[T]he issue before the trial court was not one of law: Whether the cost method of valuation mandated making an underutilization adjustment in an appropriate case. Rather, the issue was one of fact: Whether on the evidence presented the board could conclude that plaintiff failed to satisfy its burden of proving an underutilization adjustment was appropriate in this case. The trial court properly applied the substantial evidence standard of review." (*Id.* at p. 838.) Here, the trial court ruled that the AAB's decision to apply the 11 percent rate of return and 12 percent income adjustment factor were fact-specific choices analogous to the board's decision not to use an underutilization adjustment in *Dreyer's*. We agree; these decisions were not matters of law. Regardless of whether they are more properly characterized as findings of fact or

9

an "application" of the valuation method, the trial court properly reviewed them under the substantial evidence standard.

HGST relies primarily on *Sky River, supra,* 214 Cal.App.4th 720. In *Sky River*, the parties agreed on the overall valuation methodology, but disagreed on one element of that methodology. In converting from an after-tax discount rate to a before-tax discount rate, the parties disagreed about whether the assessor should have selected an average corporate income tax rate or a combined federal and state marginal tax rate. (*Id.* at p. 728.) The Court of Appeal held that this was a matter of law reviewable de novo because it was a dispute over the validity of the method itself. "Which income tax rate should be used—the marginal rate or an average rate—is a question about the method of calculating the appropriate conversion rate." (*Id.* at p. 731.) The court went on to note, however, that "*[t]he exact percentage to be used for that rate would be a question of fact* to be determined by the board based on the evidence presented." (*Ibid.*, italics added.) Here, the disputed issues were much closer to the latter type of dispute, wherein the parties each presented expert testimony about the exact numbers the assessor should have used in applying the method. The trial court's ruling here was therefore in accord with *Sky River*.

As the County accurately points out, there is no law requiring a specific rate or percentage in applying the rate of return or income adjustment factors. HGST argues the proper numbers are dictated by the methodologies set forth in the SBE Assessors' Handbook. But HGST concedes that the Handbook is not legally binding authority; rather, some courts have cited to it as persuasive authority. More to the point, however, HGST points to nothing in the Handbook that would require the use of HGST's preferred numbers. Rather, HGST relies on one section in the Handbook, which discusses methods for deriving the rate of return using the weighted average cost of capital (WACC) for a firm. The Handbook admonishes that "a particular project's cost of capital should reflect the risk of that project, which may or may not reflect the average risk of the firm. Some projects considered by a given firm will be of above-average risk; some will be of below-

10

average risk. Thus, the firm's WACC is not the correct discount rate for the firm to use when valuing a project that differs from the average risk of the firm." (SBE Assessors' Handbook (Dec. 1998) § 502, Advanced Appraisal, p. 95.) Citing to this last sentence in isolation, HGST maintains that the AAB failed to apply this methodology because the AAB used a firm-wide rate of return of 11 percent for IBM.

As the County points out, however, the remainder of the cited passage from the SBE Assessor's Handbook allows for such an approach, which it describes as a "pure play" or "comparable company variation" of the WACC method. The Handbook states, "In this variation of the [method], the appraiser attempts to find several publicly traded, single-product companies in the same line of business as the project or property being valued." (SBE Assessors' Handbook (Dec. 1998) § 502, Advanced Appraisal, p. 95.) As HGST's own expert acknowledged, this was the approach used by the assessor. HGST's expert disputed the AAB's selection of IBM as a comparable company, but he did not dispute that the comparable company method was a proper method. Whether a company such as IBM is an appropriately comparable company to rely upon as a source of data for this method is not a matter of law; it is a factual determination, and nothing in the Handbook or any other source of authority cited by HGST specifies a different method.

Similarly, HGST attacks the AAB's selection of an income adjustment factor of 12 percent as a methodological failure. As noted above, HGST's expert put forth an estimate of 22 percent, and the assessor introduced testimony to undermine the expert's analysis. The AAB settled on the 12 percent rate because it had been agreed to by computer manufacturers' industry representatives in past hearings. HGST argues that this method was arbitrary and in excess of the assessor's discretion, citing *Bret Harte Inn, supra,* 16 Cal.3d at p. 25. In that case, the California Supreme Court upheld a trial court's determination that an assessor had erroneously applied an arbitrary 50 percent depreciation factor. But the assessor there had not provided any basis for the number. By contrast, here the AAB considered the competing testimony of the assessor's expert

11

and HGST's expert, each of whom provided abundant analysis to support their respective positions. The AAB weighed the parties' evidence and credited the assessor's testimony.

The trial court appropriately applied the substantial evidence standard of review to the AAB's findings. HGST does not cite any rule of law that sets forth a method for determining the income adjustment factor in any manner contrary to the AAB's decision. The trial court noted this lack of authority, finding that HGST's expert could not identify a statute, property tax rule, or Handbook provision that mandated the use of HGST's preferred rate. Furthermore, the AAB's reliance on the testimony of a single witness constitutes substantial evidence sufficient to support its findings. (See *City and County of San Francisco v. Givens* (2000) 85 Cal.App.4th 51, 56 [witness's testimony sufficient to constitute substantial evidence].) We conclude this claim is without merit.

## C. *Application of Revenue and Taxation Code Section 110(b)*

HGST contends the trial court erred by upholding the AAB's decision not to apply the purchase price presumption set forth in section 110(b). The County contends the trial court correctly applied the substantial evidence standard of review to affirm the AAB's finding that the purchase price presumption did not apply. Among other things, the County points out that HGST failed to submit the mandatory change in ownership statement required under section 110(c) as a predicate to the application of the purchase price presumption.

### 1. *Legal Principles*

Generally, property in California is taxed based on its fair market value. "All property is taxable and shall be assessed at the same percentage of fair market value. When a value standard other than fair market value is prescribed by this Constitution or by statute authorized by this Constitution, the same percentage shall be applied to determine the assessed value. The value to which the percentage is applied, whether it be the fair market value or not, shall be known for property tax purposes as the full value." (Cal. Const., art. XIII, § 1.)

12

Section 110 defines "fair market value" as "the amount of cash or its equivalent that property would bring if exposed for sale in the open market under conditions in which neither buyer nor seller could take advantage of the exigencies of the other, and both the buyer and the seller have knowledge of all of the uses and purposes to which the property is adapted and for which it is capable of being used, and of the enforceable restrictions upon those uses and purposes." (§ 110, subd. (a).)

Subdivision (b) of section 110 sets forth the following "purchase price presumption," providing in part: "For purposes of determining the 'full cash value' or 'fair market value' of real property, other than possessory interests, being appraised upon a purchase, 'full cash value' or 'fair market value' is the purchase price paid in the transaction unless it is established by a preponderance of the evidence that the real property would not have transferred for that purchase price in an open market transaction. The purchase price shall, however, be rebuttably presumed to be the 'full cash value' or 'fair market value' if the terms of the transaction were negotiated at arms length between a knowledgeable transferor and transferee neither of which could take advantage of the exigencies of the other. 'Purchase price,' as used in this section, means the total consideration provided by the purchaser or on the purchaser's behalf, valued in money, whether paid in money or otherwise." (§ 110, subd. (b).)

Subdivision (c) of section 110 requires the taxpayer to submit certain information within a required change of ownership statement: "For real property, other than possessory interests, the change of ownership statement required pursuant to Section 480, 480.1, or 480.2, or the preliminary change of ownership statement required pursuant to Section 480.4, shall give any information as the board shall prescribe relative to whether the terms of the transaction were negotiated at 'arms length.' *In the event that the transaction includes property other than real property, the change in ownership statement shall give information as the board shall prescribe disclosing the portion of the purchase price that is allocable to all elements of the transaction. If the taxpayer fails to*

13

*provide the prescribed information, the rebuttable presumption provided by subdivision (b) shall not apply*." (§ 110, subd. (c), italics added.)

## 2. *The Trial Court Did Not Err in Affirming the AAB's Decision Not to Apply the Purchase Price Presumption*

As set forth above, if the transaction involves property other than real property, subdivision (c) of section 110 requires the taxpayer to provide a change in ownership with certain prescribed information. Failure to provide this statement results in the elimination of the purchase price presumption.

The trial court made the following finding on this point: "Although HGST claims that the Purchase Price Presumption is applicable, it failed to offer into evidence either the change in ownership statement or the preliminary change in ownership statement during the AAB proceedings. Given this failure of proof, the Purchase Price Presumption is not applicable as a matter of law." The County contends that the trial court properly found that HGST's failure to provide such a statement precluded the application of the purchase price presumption.

HGST does not identify or cite to any change in ownership statement in the record; HGST implicitly concedes that it provided no express change in ownership statement. Instead, HGST argues that, although it did not provide any form setting forth a change in ownership statement, it provided the underlying information required by such a statement. HGST contends this is all that is required to enjoy the benefit of the purchase price presumption, based on an isolated reading of the final sentence in subdivision (c): "If the taxpayer fails to provide the prescribed information, the rebuttable presumption provided by subdivision (b) shall not apply." (§ 110, subd. (c).)

We are not persuaded. "[W]e start with the language of the statute, 'giv[ing] the words their usual and ordinary meaning [citation], while construing them *in light of the statute as a whole* and the statute's purpose [citation].' " (*Apple Inc. v. Superior Court* (2013) 56 Cal.4th 128, 135, italics added.) Reading the statute as a whole, section 110

14

requires more than the bare submission of information to trigger application of the purchase price presumption; it instructs the taxpayer to provide "the change of ownership statement required pursuant to Section 480, 480.1, or 480.2, or the preliminary change of ownership statement required pursuant to Section 480.4 . . . ."[5] The sentence preceding the final sentence of subdivision (c) states that "the change in ownership statement shall give information as the board shall prescribe disclosing the portion of the purchase price that is allocable to all elements of the transaction." The reference to "prescribed information" in the final sentence of subdivision (c) clearly refers to the information as furnished within the change of ownership statement.

HGST does not identify any statements, documents, or forms that would comply with this requirement. Accordingly, the trial court's ruling is supported by both the record and the law, and we affirm it regardless of the standard of review. Even under HGST's preferred interpretation, the statute requires the taxpayer to provide information "disclosing the portion of the purchase price that is allocable to all elements of the transaction" when the transaction includes property other than real property. (§ 110, subd. (c).) HGST fails to cite any such information in the record.

HGST argues that the County waived this argument by raising it for the first time in the trial court, and that it could have provided the required statement if the County had requested one during the AAB hearings. But section 110 affirmatively places the burden on the taxpayer to provide the statement necessary for application of the purchase price assumption. The statute put HGST on full notice of the requirement. We find no waiver by the County. We conclude this claim is therefore without merit.

---

[5] As the parties point out, the Board of Equalization provides forms and instructions for these purposes. We hereby grant HGST's motion for judicial notice of the existence of these forms and the accompanying legislative history documents. (Evid. Code, § 452.)

15

### D. Imposition of Interest

HGST contends the trial court erroneously upheld the imposition of interest against HGST under section 531.4. HGST argues that the AAB failed to address the issue and failed to make the factual findings necessary to determine whether—or how much—interest should be assessed. The County contends the trial court properly upheld the AAB's imposition of interest under sections 506 and 531.4.

### 1. Background

Section 531 provides, in part: "Escape assessments made as the result of an owner's failure to file a property statement *as herein provided* shall be subject to the penalty and interest imposed by Sections 463 and 506, respectively." (§ 531, italics added.) Section 531 is in Article 4, "Property Escaping Assessment," which sets forth subsequent code sections defining various categories of escape assessments and the conditions under which penalties and interest may be imposed. These code sections include section 531.4.

The AAB's findings and conclusions did not cite to any code section in Article 4 as a basis for issuing escape assessments or imposing interest. The trial court's statement of decision cited only to section 531 and section 506 as a basis for imposing interest. Although there is some ambiguity in the record about exactly which code section authorized the imposition of interest in this matter, the County took the position at oral argument that section 531.4 provided the operative authority. HGST agrees.

Section 531.4 specifically provides for interest when an assessee fails to accurately report property used in a business, trade, or profession: "When an assessee files with the assessor a property statement or report on a form prescribed by the board with respect to property held or used in a profession, trade or business and the statement fails to report any taxable tangible property accurately, regardless of whether this information is available to the assessee, to the extent that this failure causes the assessor not to assess the property or to assess it at a lower valuation than he would enter on the roll if the

16

property had been reported to him accurately, that portion of the property which is not reported accurately, in whole or in part, shall be assessed as required by law. If the failure to report the property accurately is willful or fraudulent, the penalty and interest provided in Sections 504 and 506 shall be added to the additional assessment; otherwise only the interest provided in Section 506 shall be added." (§ 531.4.) Section 506 imposes interest "at the rate of three-fourths of 1 percent per month from the date or dates the taxes would have become delinquent if they had been timely assessed to the date the additional assessment is added to the assessment roll." (§ 506.) Both parties agree that no penalties were imposed under section 531.4, and there was no claim that HGST acted willfully or fraudulently. Interest was imposed based solely on the last clause in section 531.4.

The AAB's statement of findings and conclusions made no findings of fact regarding the imposition of interest or whether HGST had failed to accurately report its property within the meaning of section 531.4. The eleventh cause of action in HGST's complaint alleged that the assessor improperly imposed "penalty interest" on unpaid assessments and that the AAB erroneously failed to remove the interest under section 506. At trial, the County's expert testified to the process for calculating interest and clarified that because there was no finding of willful failure to report the property, only interest (and no penalty) was applicable to the unpaid taxes under section 531.4. The expert testified that imposition of interest was not within the AAB's jurisdiction and that interest is added automatically to any escape assessment if the assessee neglects to report property or "it was not valued correctly."

The trial court's statement of decision rejected HGST's claim and set forth the basis for this ruling, noting first that section 506 is not a "penalty" provision, and stating that section 506 mandates interest "shall" be added to any taxes relating to property that escaped assessment. The trial court did not address section 531.4. The court relied upon the testimony of the County's expert and applied a substantial evidence standard of review to conclude that sufficient evidence—i.e., the issuance of escape assessments—

17

supported the imposition of interest. In other words, the trial court concluded that because the AAB had found HGST owed tax as a matter of fact, the law required the imposition of interest.

### 2. *The Trial Court Misapplied Revenue and Taxation Code Section 531.4*

HGST contends interest should not have been imposed under section 531.4 because there was no finding that HGST failed to accurately report its property within the meaning of that section. HGST claims that, to the contrary, it submitted property statements accurately listing all the property at issue. The County contends that the phrase "failure to report the property accurately" in section 531.4 means that the assessee must accurately report the cost of those assets, and that merely providing a list of them is insufficient to avoid interest. The County takes the same position set forth by the trial court—that the AAB's issuance of escape assessments necessarily implies that HGST failed to accurately report its property, such that the only "finding" necessary under section 531.4 is the fact that escape assessments were properly issued. The County cites no authority for this interpretation apart from the plain language of section 531.4.

Regardless of the precise meaning of the phrase "failure to report the property accurately" in section 531.4, that section does not automatically authorize the imposition of interest based solely upon the issuance of any escape assessment. The issuance of an escape assessment does not necessarily imply that the assessee failed to report its property accurately within the meaning of section 531.4. "Property that has 'escaped' assessment was underassessed, not assessed at all, or was incorrectly valued, misclassified, etc., resulting in an under or overassessment." (*Apple Computer, Inc. v. County of Santa Clara Assessment Appeals Bd.* (2003) 105 Cal.App.4th 1355, 1362, citing *American Airlines, Inc. v. County of San Mateo* (1996) 12 Cal.4th 1110, 1127.) When property escapes assessment, the assessor has a constitutional duty to issue escape assessments "even though the taxpayer has accurately reported the cost or value figures." (*Bauer-Schweitzer Malting Co. v. City and County of San Francisco* (1973) 8 Cal.3d 942,

945 (*Bauer-Schweitzer*).) In *Bauer-Schweitzer*, an assessor undervalued the taxpayer's property by using an improperly low assessment ratio. After the assessor was indicted for misconduct, escape assessments were issued on the undervalued property, even though the taxpayer had accurately reported the cost of its property to the assessor and there was no evidence of wrongdoing by the taxpayer. (*Id.* at p. 944.) The California Supreme Court upheld the issuance of escape assessments under section 531, notwithstanding the taxpayer's accurate reporting. (*Id.* at p. 947.) The high court noted that the version of section 531.1 in effect at the time authorized escape assessments as the result of "a failure by the taxpayer to report accurately the cost of the property," but the court added, "Admittedly, such was not the situation here." (*Id.* at p. 947, fn. 3.)

Lower courts have since held that an escape assessment may be properly issued as the result of a previous mistake by the assessor. (*Hewlett-Packard Co. v. County of Santa Clara* (1975) 50 Cal.App.3d 74 (*Hewlett-Packard*).) In *Hewlett-Packard*, the taxpayer gave the assessor "all information required by law or requested by him" regarding the property at issue. (*Id.* at p. 77.) The assessor, however, misclassified some of the equipment and underassessed it as a result. Later, another auditor discovered the mistake, and the assessor issued escape assessments to recover the additional taxes. On appeal, the taxpayer argued "it is inequitable to affix additional tax liability on a taxpayer where he has fully and accurately reported the cost of his property and the assessor has honestly, though mistakenly, failed to assess the property to the fullest extent provided by law." (*Id.* at p. 81.) Citing *Bauer-Schweitzer*, *supra*, the Court of Appeal rejected this argument and upheld the issuance of escape assessments.

These cases make clear that the mere issuance of an escape assessment does not necessarily imply the taxpayer failed to report its property accurately. Accordingly, it was error for the trial court to conclude that substantial evidence supported the imposition of interest under section 531.4 based solely upon the fact that escape assessments were properly issued.

19

The County asserts that abundant evidence showed HGST failed to report its property accurately. The County points out that HGST's business property statements reported the cost of the assets based on 45 percent of IBM's net book value at the time of the purchase. The AAB found thousands of assets were booked with a stated value of just one dollar. The AAB found these reported costs were not accurate evidence of the full cash value of the assets. But section 531.4 is limited to the assessment of property "to the extent that [the assessee's failure to report any tangible property accurately] causes the assessor not to assess the property or to assess it at a lower valuation than he [or she] would enter on the roll if the property had been reported to him [or her] accurately . . . ." (§ 531.4.) Section 531.4 mandates "that portion of the property which is not reported accurately, in whole or in part, shall be assessed as required by law." (§ 531.4.) It is that "additional assessment" that is subject to the imposition of interest under section 531.4. The AAB made no findings on what portion of the property was reported accurately or to what extent the escape assessments were caused by HGST's purported failure to report the property accurately under section 531.4. The County does not cite any evidence to support such a finding. Before interest can be imposed as the result of an escape assessment, the assessor must introduce evidence of the factual predicates required under the code section authorizing the specific type of escape assessment that triggers the interest. (See *Beckman Instruments, Inc. v. County of Orange* (1975) 53 Cal.App.3d 767, 777 (*Beckman Instruments*) [appeals board made implied findings and trial court made express findings on the factual predicates for imposition of interest under section 531.3].)

On this record, we cannot determine how much interest was ostensibly imposed as a result of HGST's failure to report property accurately under section 531.4, and we cannot determine what substantial evidence would support such an imposition. For these reasons, we will reverse the judgment.

20

HGST contends we must remand the matter to the AAB to find the statutorily required facts. The County contends the imposition of interest does not fall within the AAB's jurisdiction. (See Cal. Code Regs., tit. 18, § 302, subd. (a) [establishing the board's functions].) But section 531.4 is not concerned solely with the imposition of interest; rather, it sets forth the factual predicates for issuing escape assessments under that code section, and it then imposes interest on those assessments. The AAB has the power to make findings on the factual predicates required to issue escape assessments under section 531.4, and the trial court has the power to review those findings under a substantial evidence standard of review. (See *Beckman Instruments, supra,* 53 Cal.App.3d at p. 777 [reviewing findings of fact necessary to support imposition of interest under section 531.3].) We will remand the matter for further proceedings.

### III.   DISPOSITION

We reverse the trial court's order entering judgment for the County on the eleventh cause of action. The judgment is affirmed in all other respects. The matter is remanded to the trial court with directions to remand the matter to the Santa Clara County Assessment Appeals Board. Consistent with this opinion, the Board shall make any findings required under Revenue and Taxation Code section 531.4 to determine interest on any escape assessments. The parties shall bear their own costs on appeal.

_____
Greenwood, P.J.

WE CONCUR:


_____
 Grover, J.




_____
 Danner, J.




HGST, Inc. v. County of Santa Clara
No. H044904

Trial Court:                                    Santa Clara County Superior Court
                                                Superior Court No.: CV263300

Trial Judge:                                    The Honorable Theodore C. Zayner


Attorney for Plaintiff and Appellant,           Charles John Moll III
HGST, INC:                                      Troy M. Van Dongen
                                                McDermott Will & Emery, LLP


Attorneys for Defendant and Respondent,         James R. Williams,
County of Santa Clara:                          County Counsel

                                                Douglas M. Press,
                                                Assistant County Counsel

                                                Steve Mitra,
                                                Assistant County Counsel

                                                G. Allen Brandt,
                                                Deputy County Counsel

                                                Ward Penfold,
                                                Deputy County Counsel


HGST, Inc. v. County of Santa Clara
H044904